# THE DISTRIBUTEES OF MITCHELL vs. MITCHELL'S ADM'R.

1. When either money, or property, is advanced to a child, it will *prima facie* be an "advancement" under the statute, and must be brought into *hotch pot ;* but it may be shown that it was intended as a gift, and not as

an advancement; or unless it be of such a nature that it cannot be pre-
sumed to be an advancement, as trifling presents, money expended for
education, &c.

2. Where a father, by deed, conveyed real and personal property to two of
his minor children, declaring at the time that it was not given as an ad-
vancement, but was to be in addition to their equal share of the residue
of his estate—Held, that this was not an advancement, and that the testi-
mony was properly admitted.

3. A father kept an account with his son, upon his books, which was added
up, and at the foot of the account ·was written by the father, " accounted
for, as so much that he has had of; my estate; if it is over his portion, he
must pay it back to them." No question being made of this as a testa-
mentary paper—Held, that it was competent to explain the nature of the
items, and to detail a conversation the widow of the deceased had with him
in relation to it, to show, that the account was not a debt due from the son,
or an advancement under the statute.

4. If a father, who has expended more money upon the education of one of
his-children, than the rest, wishes to make the others equal with him, by
giving him less of his estate, he must do so by a will ; he cannot accom-
plish it by considering the money so paid out, a debt, or an advancement
under the statute.

5. The Orphans' Court must decree to husband and wife the distributive
share of the wife, unless it is shown that she has a separate estate in it. A
Court of Chancery can alone compel him to make a settlement upon her.

6. When an issue is made up to ascertain the amount each of several distri-
butees have received from the estate, the costs of the proceeding is a joint
charge upon the estate, and cannot be taxed against those who are most
active in making objections.

7. A conveyance by the husband, to his wife, of a life estate in certain pro
perty, which conveys to her a present, vested interest, and is not testa-
mentary in its character, will not bar the widow of her dower.

## Error to the Orphans' Court of Montgomery.

THIS was a proceeding to ascertain the share of the distributees
of the estate of Thos. J. Mitchell, who had been advanced in une-
qual proportions, by the deceased in his lifetime. The question
being, whether Thomas J. Mitchell and Theacot E. Mitchell,
had received certain property as an advancement, or as a gift, a
jury was empannelled, who found, under the charge of the Court,
that it was not an advancement, but a gift.

To prove that certain property was intended by the deceased
as a gift, and not as an advancement, they produced certain deeds

executed by the deceased, and duly recorded, viz: one dated 27th November, 1843, conveying to Thomas J. Mitchell a negro boy, named Joe, and one of the same date to Theacot E. Mitchell, a mulatto boy named George. Also, a deed from the deceased to Thomas and Theacot jointly, dated 27th October, 1843, in consideration of a natural love and affection, certain tracts of land, which are described, including two mills, a dwelling house, all the furniture thereto belonging, and the stock of hogs, cows and mules, and the farming tools of every description, which may be on the premises, "Provided, that should the said Thomas, or Theacot, die during their minority, or without an heir, the surviving brother shall heir the whole estate of the deceased, conveyed by this deed of gift, reserving unto my wife, should she survive me, all and singular, the rights, benefits, rents, and privileges of the aforementioned premises, during the term of her natural life."

The value of the property thus conveyed, being in evidence, the grantees proved, that at the time of the execution of these deeds, the deceased said, the property therein mentioned, was given in addition to the portion to which they would be entitled on distribution of his estate, on account of their youth, inexperience, and want of education; and he wished them, on a division of the residue of his property, to have an equal share with the rest of his children. To the introduction of this testimony, the the other distributees excepted, but the Court overruled the objection, and the jury found, that the said property was not an advancement, but an extra gift.

The advancement to Martha M. Griffin, daughter of the deceased, and wife of B. S. Griffin, was next submitted to the jury, and charges from the books of the intestate, debiting her with the sum of $2,650, as part of her portion of the estate, was read to the jury. The administrator then proposed to read a note, in these words: "One day after date, I promise to pay Thomas Mitchell eleven hundred and fifty dollars, value rec'd, this —— day of ——. MARTHA M. GRIFFIN,
By B. S. GRIFFIN."

This was offered, not as evidence of an advancement, but of an indebtedness of Mrs. Griffin to the intestate. To the introduction of this she objected, on the ground that the Orphans' Court had no jurisdiction of the matter in controversy, and that it could

not be received on this issue,- which the Court overruled, and thereupon she pleaded *non est factum.*

The administrator then introduced a witness, who testified, that B. S. Griffin, was the husband of Martha, that they lived together, that he was insolvent, but that she had a separate estate. Another note was produced for fourteen dollars, signed B. S. Griffin, Martha Griffin, payable to witness, the note, and signatures, being all in the hand writing of B. S. Griffin, and had never been paid. The witness proved that he had furnished B. S. Griffin, with some lumber, some of which was charged to Mrs. Griffin, and some to B. S. Griffin. Witness had seen him purchase groceries in Wetumpka, for which he paid cash, which were carried home in his waggon, driven by a negro man belonging to his wife.

The administrator also produced an instrument in writing, purporting to be between Mrs. Griffin and Totty & Beal, to do certain work in the town of Wetumpka, which was signed by B. S. Griffin, as attorney of his wife, in his own handwriting. That the work was done under the superintendence of the husband. Mrs. Griffin lived a mile or two from Wetumpka. There was no proof that Mrs. Griffin knew any thing of these transactions, or ever saw either of the notes.

This being all the evidence to prove the execution of the note, Mrs. Griffin asked the Court to exclude it from the jury, on the ground, that it was not sufficient in law to warrant a recovery on the note. The Court overruled the objection, and suffered the testimony to go to the jury, as circumstances, from which they might infer the agency of B. S. Griffin, for his wife, to which she excepted.

She further moved the Court to charge, that upon this testimony, the plaintiff could not recover upon the note sued on; which the Court refused, and to which she also excepted.

She further moved the Court to charge, that unless it was proved that she sanctioned, authorized, or knew of the acts of her husband, assuming to act as her agent, the testimony offered would not afford grounds for a recovery in this action; which the Court refused, and charged, they were circumstances from which they might infer the agency, to which she also excepted.

The advancements to Columbus W. Mitchell, were next sub-

mitted to the jury, and entries from the books of the intestate
were read as follows :

**C. W. Mitchell,**

| | To Thos. Mitchell, | Dr. |
|---|---|---|
| 1836. | To your expenses at College,.............. | $920 00 |
| | Cash at sundry times,.................. | 855 00 |
| | Cash      "         .................. | 380 00 |
| | Do. for sulky and horse,................ | 420 00 |
| | Do............................... | 117 00 |
| 1837. | Cash at Springs and Tuscaloosa, ........ | 110 00 |
| | "    received by you of Gerald,......... | 425 00 |
| | "    per order to Gerald, ............. | 800 00 |
| 1838. | "    per self,..................... | 200 00 |
| 1840. | "    paid hire of negroes,............. | 205 00 |
| 1842. | "    Jesse, Minerva and Betty, negroes,... | 1800 00 |
| | "    paid estate of J. Thrasher, ......... | 2400 00 |

$8,632 00

Accounted for, as so much that he has received of his portion
of my estate.    If it is over his portion, he must pay it back to
them.    All of which was entered in his account book, in his hand
writing, and C. Mitchell admitted that he had received the full
amount charged, and more.    He then offered his mother, widow
of the intestate, and offered to prove by her, that many of the
charges in the account, were for expenses at College, and at
Montgomery reading law, and expenses whilst on a visit to the
Springs, and New Orleans, whilst in his minority.    Also, that
his mother remonstrated with the deceased, against holding him
liable for the charges in the book, as he might have prevented
his son from incurring these expenditures, which intestate admit-
ted.    And also, his declaration, in connection with these remarks,
that he had made these charges, that his family might know he
had made money, and what had become of it.    To the admis-
sion of this testimony of Mrs. Mitchell the other distributees, ex-
cept the two youngest, excepted.

The jury returned their verdict, that John W. Mitchell had re-
ceived as an advance $2,200; McMorris and wife, $2,100 ; B.
S. Griffin and wife, $2,650, by way of advancement, and fifteen
hundred and thirty dollars ninety cents, indebted to the estate ;

The Distributees of Mitchell v. Mitchell, Adm'r.

Columbus W. Mitchell, $4,825 27; Cook and wife, $2,585. Thereupon the Court decreed, that they had received these respective sums as an advancement, and appointed commissioners to distribute the estate, giving to the widow one fifth part of the slaves.

From this decree this writ is prosecuted, and the distributees aggrieved by the decree of the Court, now assign for error—

1. The Court erred in permitting testimony to explain the intention of the grantor, in the conveyances to the minor heirs.

2. In entertaining jurisdiction for the recovery of the note of Mrs. Griffin, in the testimony given, and the charges given, and refused.

3. In decreeing the amount of the note of Mrs Griffin, to be deducted from her portion of the estate.

4. In decreeing the distributive portion of Mrs. Griffin to her, and her husband.

5. In decreeing one-fifth part of the value of the slaves to Mary Mitchell.

6. In taxing B. S. Griffin, and wife, with the costs of the issue to determine the advancement made to Mrs. Griffin.

7. In taxing Griffin and wife, and Cook and wife, with the costs of the issue to determine the advancement made to the minors.

8. In the admission of the testimony of Mary Mitchell.

9. In not taxing C. Mitchell with the costs of the issue in his case.

A. Martin for the plaintiff in error, cited 7 Porter, 437; 8 Id. 176; 1 Camp. 43, note.

ORMOND, J.—The idea of requiring children who had been advanced, during the lifetime of their father, to bring the money or property thus received into *hotchpot*, when he died intestate, appears to have been obtained in England, from the custom of the city of London, and incorporated in the statute of distributions of 22 and 23 Chas. 1st, as stated by Lord Raymond, in Edwards v. Freeman, 2 P. Will. 449; see also, Holt v. Federick, Ib. 356, and Elliott v. Collier, 1 Ves. sen'r. 17.

The custom of London, which was referred to, is, that which

divided the freeman's personal estate into three parts, one of which, after his funeral expenses were paid, went to the widow, one to his children unadvanced by him, in his lifetime, and the other third, called the dead man's share, he might dispose of by will. [2 Bac. Ab. Customs of London, 249, c.] And any of the children who had not been fully advanced in the lifetime of the parent, could by bringing the sum so received into *hotchpot*, share equally with the others in the orphanage part.

Our statute upon this subject is to the following effect : " When any of the children of a person dying intestate, shall have received from such intestate, in his, or her lifetime, any real or personal estate, by way of advancement, and shall choose to come in to the partition of the estate with the other parceners, such advancement, both of real and personal estate, or the value thereof shall be brought into *hotchpot*, with the whole estate, real and personal, descended ; and such party bringing such advancement into *hotchpot* as aforesaid, shall thereupon be entitled to his, her, or their portion of the whole estate so descended, both real and personal." [Clay's Dig. 197, § 25.]

The question is, what shall constitute an advancement ? By the custom of London, it appears it was not every gift that constituted an advancement. It must be a marriage portion, or " something to set up in the world with." [Elliott v. Collier, 3 Atk. 528.] Presents by the father of small sums, unless expressly given by way of advancement, are not to be brought into *hotchpot*. [Morris v. Borrough, 1 Atk. 403 ; Elliott v. Collier, 3 Atk. 527.] Neither is money laid out in education or in travelling. [Pusey v. Debouverie, 3 P. Will. 317, in note.] The custom was confined alone to personal property, and a gift of land though expressly intended as an advancement, would be no bar to the orphanage share. [Cevill v. Rich, 1 Vernon, 181.] The father could also, by an act in his life, give away any portion of his personal estate, to one of his children, provided he divested himself of all property in it ; but if it was done in *extremis*, and could be considered as a testamentary act, or if any power was reserved over the subject of the gift, it was considered a fraud upon the custom, as it regarded the other children. [Tompkyns v. Ladbroke, 2 Vesey, sen'r. 591 ; Elliott v. Collier, 1 Id. 15.]

This examination has been made of the custom of London, as it was the original of that portion of the English statute of distri-

butions, requiring advancements to be brought into *hotchpot*, which was the prototype of ours, and is therefore proper to be considered as an aid, in coming to a correct conclusion, as to its true intent and meaning. Our opinion therefore is, that when either money, or property, is advanced to a child, it will *prima facie* be an *advancement* under the statute, and must be brought into *hotchpot*; but, that it may be shown that it was intended as a gift, and not as an advancement. Or, unless it be of such a nature, that it cannot be presumed to be an advancement, as trifling presents, money expended for education, &c. That it lays upon the children to repel the presumption which the statute creates, is shown in the strong case of Gilbert v. Wetherell, 2 Simons & Stu. 254. The father had lent his son £10,000, to commence business, and the son being unfortunate in trade, the father on his death-bed, directed the note which had been executed for the debt to be burned. The Court held, this was merely an extinguishment of the debt, but did not show that it was not intended as an advancement. The theory of the statute is, that every parent wishes to do equal justice to his children, and that money, or property, given to them during his life, is, and was intended, as a part of their portion, unless he manifests the contrary at the time, or unless such a presumption arises from the nature of the gift, or expenditure, of which examples have already been given.

To apply this rule to the facts of this case. At the time of the execution of the deeds to the two minors, Thomas and Thweatt, the father expressed his intention, that it was not given to them as an advancement of the portion of his estate, they would be entitled to at his death, but that it was in addition to their equal share of the residue, in consequence of their youth, inexperience, and want of education, and upon the principles above laid down, was clearly not an advancement, within the meaning of the statute.

The case of Columbus W. Mitchell is one of more difficulty. It appears that the intestate kept an account against his son Columbus, which is added up on the book, and amounts to $8,632, at the close of which is this entry; "Accounted for as so much, that he has had of his portion of my estate, if it is over his portion he must pay it back to them." No question arises upon this instrument, as a testamentary paper, nor does it appear to have been proved as such. It appears to have been offered as

evidence of an advancement, or that he was indebted to that amount, to the estate of his father. Some of the items of which the account is composed, are for expenses at College, whilst travelling, and reading law. It is very certain that some of these items could not be considered as an advancement under the statute, being expenditures which it was the duty of the parent to make, or at least of the propriety of making which he was the sole judge. It is true, a parent who had expended more upon the education of one of his children, than upon the rest, might think it his duty to make the others equal with him, by giving him proportionably less of his estate, but he could only accomplish this by a will; it could not be effected by considering it an advancement, as is shown by the cases cited. How far the relation of debtor, and creditor, could exist between the father, and son, we have not the means of determining; as to some of the items of the account it is obvious it could not. Those for example, relating to expenditures at College, and others no doubt belong to the same category.

The question which it appears was intended to be presented to this Court for revision, is, not the law arising out of this account, and written memorandum of the father, but whether the parol testimony of the widow of the deceased was admissible. We have already remarked, that this memorandum and account was not treated in the Court below as a testamentary paper, nor was any question made in the Court below in reference to it as such, but it appears to have been offered in evidence, as proof that the monies there enumerated, was a debt due from the son, or an advance to him. So considered we can see no objection to the parol evidence. It merely went to show, that as to many of the items, the relation of debtor and creditor could not exist between them, as the witness states, that the expenditures were made during the son's minority, whilst at College, and reading law ; or at the Springs and at Tuscaloosa, and other places in quest of pleasure—that she remonstrated with her husband, for these reasons, and because he could have prevented these expenditures, against his charging his son with them. This was certainly competent testimony to establish, that these items of the account did not constitute a debt due from the son, or an advancement under the statute from the father, and for this purpose were properly admitted.

We can perceive no objection whatever to the ascertainment by the jury, of the debt claimed of Mrs. Griflin, on the note executed by her husband. Indeed, whether it was considered a debt or an advancement, was wholly unimportant, if she was chargeable with it, as in either, aspect there was a surplus coming to her, of her distributive share; so that in this case the effect of her owing a debt to the estate, was precisely the same, as if she had been advanced by that amount. -- -

The charge moved for, by her, upon the evidence offered on the plea of *non est factum*, was equivalent to a demurrer to the evidence, and should have been given, as asked. Conceding all the facts to be true as stated by the witnesses, and drawing all the inferences from them which could properly be drawn, there is nothing to show that the husband had any authority to sign the note as her agent, or that he had a general authority to act as such, she having, as it appears, a separate estate. No fact is proved establishing her concurrence with, consent to, or knowledge of, any of the acts said to have been done by him, in her name, and she was therefore entitled to a verdict upon the evidence.

It does not appear from any thing in the record, that the Court erred in decreeing the distributive share of Mrs. Griffin, jointly to her and her husband. It is, to be sure, stated in the record, that she had a separate estate, and that her husband was insolvent, but how this estate was created, or in what it consisted, is not shown; and we cannot from this general expression understand, that she had a separate estate in the distributive share of her father's estate in the hands of the administrator. Nor is it easy to comprehend how such an estate could be created, unless by the act of the husband. In the absence of proof of such an estate existing in her, the Orphans' Court had no option but to decree in favor of the marital rights of the husband; a Court of Chancery could alone compel him to make a settlement upon her.

The Court erred in charging the costs of the trial of the issues made up, to ascertain the amount of the several advancements upon the particular distributees, who appear to have been most active in contesting the facts. The objections, though made by a part of the distributees, were for the benefit of all, and the costs accruing should have been a joint charge upon the estate.

There is nothing in the record from which it can be determined, that it was not proper to decree one-fifth part of the slaves to

the widow. In the absence of a provision made for her by will, one-fifth part is the smallest portion to which she is entitled by statute, and that there was no will is evident from the entire record. The deed executed by the intestate, giving her a life estate in certain land, is not shown to have been testamentary in its character, but conveyed to her a present vested interest, subject to the contingency of her surviving him.

From this examination it appears, that the only error upon the record, is the refusal to charge the jury as requested by Mrs. Griffin, and in charging her with the amount of the note as a debt due from her to the estate; and also, in not taxing the costs of the issues, to ascertain the amount of the several advancements against the estate generally. In all other respects, the decree of the Orphans' Court is affirmed, and the cause remanded, that it may be reformed in these particulars.