## AUTREY vs. AUTREY'S ADM'R.

[FINAL SETTLEMENT AND DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Advancements.*—Money, or property, given by a parent to a child, will be presumed to have been intended as an advancement, unless such presumption is repelled by the nature of the gift, or by other evidence showing that it was intended, as an absolute gift. To show that an absolute gift, and not a mere advancement, was intended, the contemporaneous declarations of the parent are admissible evidence for the child; "and when the question arises between distributees, there is much reason, as well as authority, in support of the proposition," that the subsequent declarations of the parent, expressive of his intention in parting with the property, are admissible evidence for the same purpose. But in this case, conceding the admissibility of such subsequent declarations, and considering them in connection with the other facts proved, they are not sufficient to show that the primary court erred in deciding that the property was intended as an advancement.

APPEAL from the Register in Chancery, at Claiborne, sitting as Probate Judge for Monroe county.

IN the matter of the final settlement and distribution of the estate of Alexander Autrey, deceased, on the suggestion of the administrator, that the decedent had made advancements in his life-time to Anonymous B. Autrey, his son, which ought to be brought into hotchpot. On the trial of the issue joined on this suggestion, as the bill of exceptions states, "the only evidence adduced was the following":

1. The answer of said Anonymous B. Autrey, on oath, as required by the act of February 8, 1858, "to better ascertain advancements," &c., (Session Acts 1857–58, p. 305,) in the following words: "Affiant says, that his father, Alexander Autrey, gave him the following described property, to-wit: In the year 1828, household furniture, valued by said Alexander Autrey at the time of the gift at $25; one negro, Albert, valued at, and worth $400; in the year 1821, or 1822, one colt, worth $5; in the year 1851, one negro man, Dick, valued by said Alexander Autrey at

$1,000 ; and in the year 1854, in cash, $1,980. The above is the only property affiant ever received from his father, as a gift or advancement. There was property given by said Alexander Autrey to all his children ; but affiant cannot positively say, whether the property was so given as an advancement, to be accounted for on the final settlement of the estate of said Alexander; or was intended as a gift to said children."

2. The testimony of Parthenia B. Autrey : " Alexander Autrey in his life-time gave to Anonymous B. Autrey, his son, one negro boy, Albert ; one negro woman, Olly ; also, one young horse, five or six head of cattle, four or five sheep, one bed and furniture ; worth, in all, about $1200. Said property was given about the year 1828. He also gave to said Anonymous, in the year 1853, a likely negro man, named Dick Hunter, worth about $1,000, and $2,000 in gold ; and he also gave to said Anonymous, in the year 1855, $2,500, as she was informed by said Alexander and Anonymous Autrey."

3. The testimony of Willis Darby : " Anonymous B. Autrey told witness, in 1854, that Alexander Autrey let him have $2,500, given it to him at that time. Anonymous then lived in Texas, as witness was informed by him."

4. The testimony of R. T. Bagget : " Alexander Autrey told witness, in a conversation had at his fireside, that he had given away some property to his children. The words used were these : 'Now, Mr. Baggett, I don't intend that that property shall ever come back into my estate again— I gave it as a present, to help them along to live.' Immediately after that, he said that he had made a will, and showed it to witness, and witness read it. 'Now, the property in my possession is all that is included in that will. I have named no property in that will, only the valuation of it, which is $12,000 worth of negro property for my living children' ; $6,000 for each of his children, if that much was on hand, in money. He then said, there would probably be thirty-five or forty negroes left for his wife, during her life ; and at her death, he wanted those

negroes all divided equally among his heirs, his grandchil-
dren included. This conversation was in 1853, or 1854.
Witness heard said Autrey repeat the same on other occa-
sions subsequently, and heard him say, that what he had
given his children was theirs, and not his; that he had
given it to them as a present; that they had helped him to
make it, and [he] wanted to see them enjoy it while he
lived; and that if they spent it, he could not help it. He
often told witness, that he never wanted the property he
had given to them to come back into his estate, or to be
divided among his heirs; this was subsequent to the first
conversation spoken of. Witness has heard him say the
same thing, in substance, ten or twelve times, more or less."
(Cross-examination.) "Said Autrey never named any prop-
erty he had given to any of his children; but he told wit-
ness, that he had given more property to his sons, than to
his daughters. He never told witness what his intentions
were when he gave off his property to his children. In
the conversations alluded to, witness can't say that said
Autrey used the language, 'I never intended,' or 'I don't
intend'; but thinks he said, 'I don't intend.'

5. The testimony of A. L. Autrey, a son of Anonymous
B. Autrey: "About November, 1855, I went to live with
my grandfather, Alexander B. Autrey, and remained with
him until his death. During that time, he frequently told me,
that he had made advancements of property to his different
children, but had always intended such advancements as
absolute gifts, and did not wish or intend that they should
ever be brought up on the final disposition of his estate.
I have heard him say, that he had loaned a negro girl to
Anonymous B. Autrey, to keep until he (said Alex.) could
get a negro boy for him; that said negro girl died in the
possession of said Anonymous, but belonged to him (said
Alex.) at the time of her death, and he did not hold said
Anonymous accountable for her value." (Cross-examina-
tion.) "I would further state, that I now recollect of no
person being present when said Autrey and myself had the
conversations mentioned above; but they were repeated

frequently while I was with him. He also said, that he made a will at one time, but had destroyed it ; and that he did not wish his property to be divided, or taken from those to whom he had given it, if he should die without making another will. I believe Olly was the name of the girl which said Autrey said he had given to said Anonymous. I do not know her value."

" Thereupon, the said Anonymous B. Autrey moved the court, that he be not charged with any advancements ; but the court overruled his motion, and held that he was chargeable with $6,300 as an advancement from his father, which he should bring into hotchpot" ; and this ruling and decision of the court, to which an exception was reserved by the said Anonymous, is now assigned as error.

TORREY & LESLIE, for appellant.—The evidence set out in the record clearly shows, that the court below erred in charging the appellant with $6,300 as an advancement. As no objection was made to any portion of the evidence, its admissibility was thereby conceded, and cannot now be questioned. As to the admissibility of the decedent's subsequent declarations, if the court should hold that that question can be here considered, the appellant relies on the following authorities : *Phillips v. Chappell*, 16 Geo. 16 ; *Sherwood v. Smith*, 23 Conn. 516 ; *Lawson's appeal*, 23 Penn. St. (11 Harris,) 85 ; *Johnson v. Belden*, 20 Conn. 322 ; *Wentz v. Dehaven*, 1 Serg. & R. 312 ; *Butler v. Mer. Ins. Co.*, 14 Ala. 777 ; *Mitchell v. Mitchell*, 8 Ala. 421.

J. W. POSEY, *contra*.—The decree of the court below is fully sustained by the evidence. The subsequent declarations of the intestate, if admissible for any purpose, are not sufficient to outweigh the other facts in proof ; and they are not competent evidence.—*Rumbly v. Stainton*, 24 Ala. 712 ; *Martin v. Hardesty*, 27 Ala. 458 ; *Gillespie v. Burleson*, 28 Ala. 552 ; *May v. May*, 28 Ala. 153.

R. W. WALKER, J.—The rule is, that when either

money or property is given by a parent to his child, it will be presumed to be an "advancement" under the statute, unless the nature of the gift repels such presumption; as in the case of trifling presents, money expended for education, &c. But the presumption, that property given by a parent to his child was intended as an 'advancement,' may be repelled by evidence showing that a gift, and not an advancement, was intended; and for this purpose, the contemporaneous declarations of the parent are admissible.— *Mitchell v. Mitchell*, 8 Ala. 414, 421; *Butler v. Mer. Ins. Co.*, 14 Ala. 777. And where the question arises between distributees, whether property received by one of them was intended as an 'advancement,' or as a pure gift, there is much reason, as well as authority, in support of the proposition, that the declarations of the intestate, made subsequent to the delivery, expressive of his intention in parting with the property, are admissible in favor of the child to whom it was delivered.—*Phillips v. Chappell*, 16 Geo. 16; *Sherwood v. Smith*, 23 Conn. Rep. 516; *Lawson's appeal*, 23 Penn. St. R. 85; *Johnson v. Belden*, 20 Conn. 322; 2 Phill. Ev. (C. & H.'s notes, edit. of 1859,) 705.

We need not, however, decide this question in the present case; for, assuming the admissibility of all the evidence set out in this record, we are not so well convinced that the register erred in his conclusion, that we are willing to reverse his decree. The appellant filed his answer to the allegation, as required by the act of February 8, '58 (Acts '57–8, p. 305); and in that he states, that in 1828 he received "household furniture, valued by said Alexander Autrey at the time of the gift at $25, and one negro, Albert, valued at and worth $400;" and that in 1851 he received "one negro man, Dick, valued by said Alexander Autrey at $1,000." The fact that the property was given and received at a specified value, seems to indicate that it was intended as an advancement, and not as a pure gift. At any rate, it is clear from the appellant's answer, that the alleged intention of the intestate, that the property should be held as a gift, and not as an advancement, was

not communicated to the son, either when the property was delivered, or at any time afterwards. This circumstance, we think, raises a strong presumption against the existence of such an intention. The only evidence to repel this presumption consists of the subsequent declarations of the parent, testified to by two witnesses, one of whom is the son of the appellant. The declarations detailed by the witness Baggett, are reconcilable with the idea, that the intestate intended that the property should be considered an advancement; and that all that he meant to state to the witness was, that the property which he had delivered to his children had not been simply loaned to them, but that he had given them the absolute title. When we consider the relation of the other witness to the appellent, and the caution with which evidence of declarations, made in casual conversations, should always be received, we are not convinced that the register erred in deciding that this testimony was insufficient to overturn the presumption of an ' advancement' arising out of the other facts in the case. The record does not show that the girl Olly constituted a part of the advancements with which the appellant was charged. On the contrary, the inference from the record is, that the sum with which he was charged was exclusive of her value.

Decree affirmed.