# Clements, Adm'r *v.* Hood.

*Proceeding in Probate Court by Administrator for Discovery of Advancements before making Final Settlement.*

1. *Interrogatories; general exception to; when not reviewed.*—An objection "to each interrogatory, calling out each separate paragraph of the answer of witness, and also to each paragraph of the testimony," and the like, is nothing more than a mere general exception to the whole of witness' testimony, and will not cause the court to dissect a mass of evidence to find error, when portions of the questions or answers objected to are legal.

2. *Declarations of distributee; competency to disprove.*—On a contest, under the statute (§ 1907, R. C.), of the answer of a distributee in a proceeding by the administrator for the discovery of advancements, if the distributee's declarations are offered against her, she is a competent witness to contradict such declarations.

3. *Same; what competent evidence for distributee.*—In such a proceeding, any acts or declarations of the decedent tending to show that any particular property, given or lent by him to a distributee, was not intended as an advancement, is competent evidence for the distributee.

4. *Advancement; what is prima facie.*—Property given by a parent to a child, will be presumed to have been intended as an advancement, unless the presumption is repelled by the nature of the gift, or by other evidence showing an absolute gift.

5. *Same; burden of proving and disproving advancements.*—Where the administrator seeks to charge a distributee with other advancements than those admitted in the answer, the *onus* is cast upon the administrator; but where the proof shows that personal property was sent by the decedent to a distributee, and allowed to remain in her possession, this casts upon the distributee the burden of repelling the presumption that the gift was intended as an advancement.

6. *Advancement to married woman in another State; her receipt as a contract to account, when void; her receipt as evidence.*—Where a married woman, residing in Mississippi, receives property from her father residing here, and, without the concurrence of her husband, executes a receipt in that State for the property at a given valuation, stating that the amount is to be deducted from her distributive share of her father's estate, the instrument is not merely a receipt but a contract to account, and, by the common law,

[Clements, Administrator v. Hood.]

·which is presumed to prevail in a sister State in the absence of proof to .the contrary, is void, and as a contract imposes no obligation on her; but may be evidence of an admission that the property was received as an advancement, subject to be contradicted or explained by other evidence.

7. *Presumption when receipt found among one's papers at his death; burden of disproving presumption; when not binding on maker.*—Where a receipt or agreement, deposited as an *escrow*, is found in possession of the party for whom it was intended, or among his papers at his death, it is presumed to have been properly delivered, and the *onus* of disproving that fact lies on the party seeking to avoid it; but where it is shown to have been delivered in violation of the instructions under which it was deposited, it is not binding on the maker.

APPEAL from the Probate Court of Tuskaloosa.

The issue in this case was between the administrator and ·one of the several distributees of John A. Goodson, deceased.

On the 14th of June, 1873, N. N. Clements, as the adminis-·trator of the estate of said John A. Goodson, filed a petition ·in the Probate Court of Tuskaloosa county, praying such necessary orders and decrees of said court as to compel a ·discovery of certain alleged advancements made by said ·Goodson in his life-time to his several children. The proper orders were made, and publication had to notify Mary Hood, ..and her husband, Hiram Hood, non-residents, living in the State of Mississippi. On October 8, 1873, Mary Hood made answer by affidavit, before a notary in Mississippi, wherein ..she swears that she recieved the following advancements, and none others: February 12, 1851, $70.00; August 28, 1858, $130.00; September 18, 1859, $100.00; September 8, 1870, .$100.00. The same was sworn to by Hiram Hood. On the trial, the plaintiff introduced a sister of Mary Hood, who testified as to certain declarations of Mary Hood regarding some of the property she, Mary Hood, had received. Witness, among other things, stated that she often heard Mary Hood say "she would have to account for what she got, and the ·other children would have to account for what they got." The following receipt being proved to be in Mary Hood's handwriting, was read in evidence:

"VERONA, MISS, NOV. 24, 1860.

"Received of my father, John A. Goodson, a negro girl named Lavinia, valued at $1,007—one thousand and seven dollars—which amount is to be deducted out of my distributive share of father's estate, when divided.

"MARY HOOD.

"Attest: T. O. SAMPSON, J. P."

This was about all of the testimony introduced by plaintiff. Mary Hood then introduced as a witness, her brother, Wm. F. Goodson, who testified that it was agreed between his

father and Mary Hood, that his father should purchase a negro girl for her as a nurse, his father agreeing to make a deed to secure her property in such negro girl under the laws of Mississippi; at his father's request he took said girl in a buggy to his sister, in Itawamba county, Mississippi,. and also a deed sent by his father; upon getting there, his sister's husband consulted a justice about the deed, and concluded that it was worthless to protect the property of said girl in his sister and her children, as agreed between his father and sister; they refused to receive the negro, but the negro was left with them because witness says he had to bring a younger brother back, who was visiting his sister, and did not have room in the buggy for the negro. When it was evident that he had to leave the negro, his sister and her husband agreed to write out a receipt, and did so—the same that is in evidence—agreeing, when they gave the receipt to the witness, he, witness, should not deliver it to his father, so as to make it then binding on Mrs. Hood, until the proper deed was made by his father, carrying out his original promise to Mrs. Hood. Witness testified that he gave the receipt to his father, but he (his father) failed to make the second deed, and that his father told him so; and that his father also told him that said negro "went from his property." The plaintiff objected to all this evidence, but his objection was overruled, and he excepted. Several interrogatories were propounded to said witness by defendants, the plaintiff objecting to each separate paragraph. of the answer of the witness, and being overruled, took his exception. Mrs. Mary Hood then offered herself as a witness,. for the purpose of contradicting certain testimony given by her sister as to declarations made by her, Mary Hood, hereinbefore mentioned. The court allowed her to testify, notwithstanding the objections of plaintiff, who took his exception. Some other testimony, which is noticed in the opinion, was also before the court. When the testimony was concluded, the defendant, among other things, asked the court to charge the jury as follows: "The burden of proof is on the administrator, in this case, to show that the sworn answers of Mary and Hiram Hood are untrue; and that Mary Hood received property from her father as an advancement, for which she and her husband had not accounted in their answer." The court gave the charge, and the plaintiff excepted. The defendants also asked this charge, which was given: "That the receipt signed by Mary Hood, and offered in evidence to show that John A. Goodson advanced her the negro Lavinia, is only *prima facie* evidence of such advancement,.

but not conclusive;" to the giving of which charge the plaintiff excepted. The various rulings of the court, the plaintiff now assigns as error.

S. A. M. Wood, for appellant.

Hargrove & Lewis, *contra.*

No briefs came to Reporter.

Stone, J.—1. Many of the objections and exceptions taken to the admission of evidence, offend the rule declared in the case of *Milton v. Rowland,* 11 Ala. 732—are too general in their effect, and will not be here noticed.—See, also, *South and North Alabama Railroad Co. v. Jones,* at this term. A specimen of the class of exceptions to which we refer, is the following: "To each interrogatory, calling out each separate paragraph of the answer of the witness, plaintiff objected, and also objected to each paragraph of the testimony, . . and plaintiff excepted." This statement is placed at the end of a mass of testimony, a large part, if not the whole, of which was legal and competent. Such exception can only be treated as a general exception to the whole of the witness' testimony; and this court will not dissect and scrutinize the various propositions contained in the mass, to ascertain if one or more of them may assert propositions erroneous in law. To command our attention, error must be more specifically pointed out.

2. Mrs. Hood was not an incompetent witness to testify on the sole subject on which she was interrogated. It had no reference to any "transaction with or statement by" the intestate.—Revised Code, § 2704; *O'Neal v. Reynolds,* 42 Ala. 197.

3. The remaining objections and exceptions to the introduction of evidence, are all of a class. They raise the single question of the right of defendant to prove acts and declarations made by John A. Goodson, the deceased, in his life-time, showing his rule and intention in the matter of advancements to be charged against his several children after his death. The issue between the parties which was being tried, was between Mr. Goodson's administrator and one of the distributees. Whether we regard the administrator as claiming in his own legal right, or as trustee for the creditors and distributees, in neither event can he claim a higher right or interest than Mr. Goodson, the intestate, owned and

could assert in his life-time.　He had the title, and had succeeded only to the rights of his intestate.　He was but his representative, and was concluded by all encumbrances, limitations, and disabilities which Mr. Goodson had imposed on himself.　He stood only in Mr. Goodson's right.　Claiming, as he did, strictly in privity of estate under his intestate, it follows that he is bound by all acts and declarations done and made by such intestate, showing, or tending to show, that any particular property given or lent, was not intended to be a charge by way of advancement.　To hold otherwise would be to assert that a prospective administrator or distributor can acquire a vested right, which will control the power of a living ancestor in the disposition of his property; that the stream can rise above its fountain.—See *Autry v. Autry*, 37 Ala. 618, and authorities cited.　There was no error in admitting evidence of the declarations made by Mr. Goodson, after the slave and other property went into the possession of Mrs. Hood, offered as it was, by her, to repel the presumption of an advancement.

4.　It is settled by an unbroken current of authorities, that money or property, given by a parent to a child, will be presumed to be intended as an advancement, unless such presumption is repelled by the nature of the gift, or by other evidence showing that it was an absolute gift.—See *Autry v. Autry, supra; Mitchell v. Mitchell,* 8 Ala. 421; *Butler v. Mer. Ins. Co.* 14 Ala. 777; *Merrill v. Rhodes,* 37 Ala. 452. But such presumption is not conclusive.　It may be overturned by proof.

5.　The issue in this case was formed on the sworn report of Mary Hood, and her husband, Hiram Hood, in answer to a notice to them "to report on oath a list of the property received," &c., under section 1905 of Revised Code.　In the report they had set forth that they had received various sums of money amounting to four hundred dollars.　They then stated "that they received no other money or property from said Goodson in his life-time, which was intended as advancements."　To form an issue on this report, it became necessary for the administrator to affirm that Mrs. Hood had received other money or property, describing it.　This had the effect of putting the onus of proof on the administrator, to show that she had received other advancements with which she should be charged.　The maxim applies, *Ei incumbit probatio, qui dicit.*　The Probate Court did not err in the charge given numbered 1.

6–7.　When, however, the fact was proven, if so found by

the jury, that the slave, Lavinia, had been sent by the father to his daughter, and had been allowed to remain there, this shifted the onus, and cast on Mrs. Hood the necessity of repelling the imputation that it was intended as an advancement.—See authorities *supra.* And such presumption was very much fortified by the terms of the receipt, if valid,. found among Mr. Goodson's papers, which reads as follows:

"Rec'd—Vernon, Miss., Nov. 24, '60—of my father, John A. Goodson, a negro girl, named Lavinia, valued at ($1,007) one thousand and seven dollars, which amount is to be deducted out of my distributive-share of father's estate, when divided.      MARY HOOD.

"Attest: T. O. SAMPSON, Justice of the Peace."

The proof shows that Mrs. Hood signed this receipt; and being found among the papers of the deceased, if binding, and if the transaction remains unexplained, it amounts to conclusive proof that the slave, Lavinia, was received by Mrs. Hood as an advancement. The paper, on its face, is more than a receipt; it is a contract to account.

W. F. Goodson, son of intestate, testified that he delivered the slave to Mrs. Hood; that the slave was not received by his sister as a gift or advancement, because she was dissatisfied with the terms of the title executed by her father,. and which title accompanied the slave. Witness then left the slave with his sister, and agreed that a title should be drawn and sent to her, containing other and different stipulations, then agreed on. Witness testified that he took the receipt, copied above, upon an express agreement and condition that he was not to deliver it to his father until such corrected title was executed and forwarded. He stated further that he delivered the receipt to his father, and that no corrected title was ever made. No excuse or explanation is offered why the receipt was delivered, without requiring the performance of the condition, on which alone, he testified, he was authorized to make the delivery. There is much proof in the record, tending to show that the intestate never regarded the slave as having become the property of Mrs. Hood.

If the testimony of W. F. Goodson be true, the receipt was not lawfully delivered to his father, and it could not become a binding contract. It was signed and delivered only as an escrow; and the condition not having been performed, it could not be delivered so as to bind her.—See 1 Brick. Dig.. 308, §§ 31, 32, 34.

[Sanders v. Robertson et als.]

This question, however, does not appear to have been mooted in the court below.

This receipt, or contract, was executed by a married woman, without the concurrence of her husband. All the testimony bearing on the question shows it was signed in Mississippi, and that Mrs. Hood then resided there. The validity of the paper, as a binding contract, depends on the law of that State. There is no proof before us, and there was none before the Probate Court, showing what was the law of Mississippi bearing on that subject. In such case, we are bound to presume the common law prevailed there.—1 Brick. Dig. 349, § 9.

Under the rules of the common law, such contract made by a married woman is void, and imposes no obligation, as a contract, on her.—*Alexander v. Saulsbury*, 37 Ala. 375. It could only amount to proof of an admission, made by her, that she had received such property. Such admission is not conclusive, but is, at most, only evidence to be weighed. Any other legal evidence, contradictory or otherwise, should have been received, bearing on the question of advancement *vel non*.

The third charge given, while it did not take the same view of the receipt which we have expressed, was too favorable to appellant, and could not possibly have worked any injury to him.

There was no error in the second charge given.

Judgment affirmed.