# Fennell *v.* Henry.

*Bill in Equity for Settlement and Distribution of Decedent's Estate.*

1. *Advancement by parent to child; contemporaneous declarations.* When money or property is given by a parent to one of his children, it will be presumed to have been intended as an advancement under the statute (Code, §§ 2262–67), unless that presumption is repelled by the nature of the gift, as trifling presents, &c.; and what the parent says, at the time of making the gift, is competent evidence of his intention in making it.

2. *Same; giving note for price or value of property; parol evidence in explanation.*—Where a father delivered slaves to a married daughter, taking from her a promissory note, bearing interest, for the estimated value, such note shows a debt, and not an advancement; and parol evidence can not be received, to show that the transaction was intended as an advancement. (STONE, J., *dissenting*, held that, as the note of a mar-

[Fennell v. Henry.]

ried woman is not binding as a contract, the note could only operate as an admission, or acknowledgment, and was open to parol explanation, when the question of advancement *vel non* arose on the final settlement of the estate.)

3. *Same; gift of slaves afterwards emancipated.*—Slaves having been given by a father to one of his children, in 1859, as an advancement, their subsequent emancipation, as the result of the war, did not relieve the child of accounting for their value as an advancement.

APPEAL from the Chancery Court of Marshall.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 9th December, 1879, by Isham W. Fennell and others, as heirs at law and distributees of the estate of James W. Fennell, senior, deceased, against Mrs. Charity E. Henry, and others, who were also distributees of said estate; and sought, principally, a final settlement and distribution of the estate. The decedent died, intestate, on the 19th January, 1864, and several of his children afterwards died. All the persons interested in the estate were brought before the court, either as plaintiffs or defendants. The chancellor took jurisdiction of the settlement of the estate, and ordered a reference of the matters of account. The principal matter of controversy was as to the liability of Mrs. Henry to account, as for an advancement, for the value of five negroes, which she received from her father in 1859, and for which she executed to him a promissory note for $2,000, with interest from date. This note was delivered up to Mrs. Henry by her mother, after her father's death, and was by her destroyed; and no copy of it is shown to have been preserved. Mrs. Fennell and Mrs. Henry both testified to the execution and contents of the note, and also to its destruction. On all the evidence before him, the chancellor refused to charge Mrs. Henry with the $2,000, or value of the slaves, as an advancement; and this part of the decree is now assigned as error by the complainants.

HUMES & GORDON, with whom were CABANISS & WARD, for appellants.—The question of advancement *vel non* is always one of intention, and the declarations of the parties are competent evidence in determining it.—*Olds v. Powell*, 7 Ala. 655. A promissory note is, *prima facie*, evidence of a loan, or debt; but it is not conclusive as to the character of the transaction, or the intention of the parties, in a controversy between the maker and the other distributees.—*Cliford v. Baessman*, 41 Wisc. 597; *Gully v. Grubbs*, 1 J. J. Mar. 387; *Gordon v. Gordon*, 1 Metc. 387; *Speer v. Speer*, 14 N. J. Eq. 240; *Kingsbury's Appeal*, 44 Penn. 460; *Parks v. Parks*, 19 Md. 323; *Stewart v. State*, 2 Har. & G. 114; *Powell v. Powell*, 5 Dana, 168; *West v. Bolton*, 23 Geo. 531; *Vaden v. Hance*, 1 Head, Tenn. 300; *Shaw v. Kent*, 11 Indiana, 80; *Newell v. Newell*, 13 Vt.

[Fennell v. Henry.]

24; *Christy's Appeal*, 1 Grant's Cas. 369 ; *Phillips v. Chappell*, 16 Geo. 16 ; *Meeker v. Meeker*, 16 Conn.. 383 ; *Tillotson v. Race*, 22 N. Y. 127 ; *Merkel's Appeal*, 89 Penn. St. 340 ; *Woolery v. Woolery*, 29 Indiana, 254 ; *Wilson v. Beauchamp*, 50 Miss. 24 ; *Fellows v. Little*, 46 N. H. 37 ; *Bragg v. Massie*, 38 Ala. 89 ; *Pate v. Johnson*, 15 Ark. 275. These authorities show that the note, considered as a contract between parties *sui juris*, would not be conclusive. But the note here was signed by a married woman, and has no validity as a contract ; and the rule which excludes parol evidence, to control or affect that which is written, is limited to written instruments which are contractual.—*Clements v. Hood*, 57 Ala. 459 ; *Hicks v. Hinsdale*, 12 Mich. 99 ; *Bank v. White*, 14 Nev. 373 ; 1 Greenl. Ev. § 295. The note does not stand as the only written evidence of the transaction, but must be construed in connection with the memorandum indorsed on it by the decedent.—1 Greenl. Ev. § 283 ; *Sewall v. Henry*, 9 Ala. 30 ; *Collins v. Whigham*, 58 Ala. 438 ; *Holt v. Bancroft*, 30 Ala. 193 ; *Byrne v. Marshall*, 44 Ala. 355 ; Smith on Contracts, 90 [29], note ; *Law v. Smith*, 2 R. I. 244 ; *Heywood v. Perrin*, 10 Pick. 228. If the memorandum was indorsed on the note by the father after it was given, without the knowledge of the daughter, it operated as a release or extinguishment of the note, and the amount remained as an advancement.—*Gilbert v. Wetherell*, 2 Sim. & Stu. 254. The note and indorsement being construed and considered together, and the declarations of the decedent being received, there can be no doubt that the slaves were intended as an advancement ; and no controversy as to the fact would ever have arisen, but for the emancipation of the slaves.

DENSON & DISQUE, and WATTS & SONS, *contra*, cited *Grey v. Grey*, 22 Ala. 233 ; and *Terry v. Keaton*, 58 Ala. 667.

STONE, J.—"Any estate, real or personal, which has been given by any intestate in his life-time, as an advancement to any child, or other lineal descendant, must be considered as part of the estate, so far as regards the division and distribution thereof amongst his children or their descendants, and must be taken by such child or descendants towards his share of the estate of the deceased."—Code of 1876, § 2262. "The maintaining, educating, or giving money to a child, or other lineal descendant, without intending it as a portion or settlement in life, is not an advancement."—*Ib.* § 2267.

We have, in these two sections, a pretty clear intimation of what the legislature intended should be regarded as an advancement, and what should not be so regarded. It must be a gift —a perfected gift, parting with the ownership—made during

life to a child, or other lineal descendant. Its purpose must be to advance such child, or lineal descendant, in life. This is done, by giving, by anticipation, the whole, or a part, of what it is supposed a child will be entitled to on the death of the parent, and must be proved to have been intended as an advancement, chargeable on the child's share of the estate.—*Osgood v. Beers*, 17 Mass. 355; *Shaw v. Kent*, 11 Ind. 80. And the statute also informs us what classes of gifts or presents must not be treated as advancements; namely, those supplied in maintenance or education, and gifts made, not intending them as a portion or settlement in life. We think the natural import of this language is, that when the subject of the gift has substantial value—will be solidly useful in setting up the child or descendant in life—then the *prima facie* intendment is, that it is an advancement, to be taken into account in distribution. But this presumption may be overturned by proof. On the other hand, expenditures in maintenance or education, presents not ordinarily regarded as useful in setting up the child in life, or other gifts shown not to be intended as advancements to be accounted for, are not to be brought into account in final settlement. Hence, this court has many times said : " The rule is, that when money or property is given by a parent to his child, it will be presumed to be an advancement under the statute, unless the nature of the gift repels such presumption ; as in the case of trifling presents, money expended for education, &c." *Mitchell v. Mitchell*, 8 Ala. 414; *Butler v. Mer. Ins. Co.*, 14 Ala. 777; *Merrill v. Rhodes,*, 37 Ala. 449; *Autrey v. Autrey, Ib.* 614. So, it is settled, that what a parent says, at the time he gives property to child, is competent evidence of the intention with which the gift is made.—See authorities *supra ;* also, *Lawson's Appeal*, 23 Penn. St. 85 ; *Phillips v. Chappell*, 16 Ga. 16.

There seems to be no controversy in this case, as to the nature of the title Dr. Fennell conveyed, and intended to convey, to Mrs. Henry, his daughter. The slaves were evidently intended to be her property, from the time of the transaction. Now, this transaction was intended to be a sale of the slaves, to be paid for—an advancement to be accounted for in distribution, or a gift outright, not to be accounted for. No one contends it was a gift outright, and the attendant circumstances clearly show it was not so intended. Was it intended as a sale? Was it intended that Mrs. Henry should pay her father, Dr. Fennell, for the slaves? This must depend on the facts, as they transpired at the time. Only two persons testify as to what took place—Mrs. Fennell and Mrs. Henry. They alone, except Dr. Fennell, were present. In many respects, they differ ; but, in all important particulars, the difference is much less

than, at first blush, it appears to be. Mrs. Fennell testifies, positively, that the slaves were given as an advancement, to be accounted for in distribution, and that Dr. Fennell so informed Mrs. Henry at the time. Mrs. Henry testifies as follows: "To 25th interrogatory she saith: 'I executed a note to my father for certain negroes, but not as an advancement. He never said a word about advancement, but said he had as soon for me to use some of his property while he was yet living, as to get it after his death. Never thought of it as an advancement— never heard the word advancement used in regard to the negroes until summer of 1878.' Answer to 27th interrogatory: "Father was not making advancements at the time the note was given. He was willing for me to have the use of some of his property while he was living, as to get it after his death. So he remarked at the time the note was taken bearing interest from date, from the fact he had made no advancements to the children. Note was taken bearing interest. That interest was to pay for use of the negroes. The note with interest was to be paid out of my part of my father's estate. If that was not enough, the negroes stood good for the rest." Speaking of giving the receipt to her mother, Mrs. Henry, in answer to 53d interrogatory, says: "Mother wrote a receipt, stating that I had received $2,000 from my father, that I refused to sign. Afterwards she wrote one for the negroes. I told her I had never received any money from my father, and to sign that would be signing an untruth." She signed the receipt for the negroes, and soon afterwards said, "I do not believe those who will wind up the estate will charge me with the negroes." Answer to 42d interrogatory. Answering the 7th interrogatory she had said: "I know intentions and designs of my father in regard to said note at time of its execution, in regard to its payment, and how it was to be paid."

In one place Mrs. Henry testified she received the slaves as a purchase, and was to pay for them. In many places she denied receiving them as an advancement. Yet, when she comes to testify what was the understanding—what the declaration of her father when she obtained the slaves and gave the note—she expresses substantially all the ingredients of an advancement, although the word *advancement* was not used. This transaction took place soon after Mrs. Henry's marriage. The property came from her father to her, by way of anticipation—that she might enjoy some of his property during his life—not to be paid for to him, or during his life-time, but to be paid out of her part of her father's estate. This, then, is what she means by purchase of the slaves, and payment of the purchase-money note. As facts, if there be nothing in the giving of the note, they prove an advancement, and not a sale

of the slaves to be paid for.—2 Lomax on Ex'rs, 367 [215],
*et seq.*; 2 Williams on Ex'rs, 1351, *et seq.*; *Speer v. Speer*, 14
N. J. Eq. 240; *Clark v. Warner*, 6·Conn. 355; *Meeker v. Meeker*,
16 Conn. 383; *Wentz v. Dehaven*, 1 Serg. & R. 312; *Lawson's
Appeal*, 23 Penn. St. 85; *Kingsbury's Appeal*, 44 Penn. St.
460; *Button v. Allen*, 1 Halst. Ch. 99; *Cleaver v. Kirk*,
3 Metc. Ky. 270; *Cecil v. Cecil*, 20 Md. 153; *Cawthorn v. Cop-
pedge*, 1 Swan, 487; *Vaden v. Hance*, 1 Head, 300.

It is contended for appellant, that inasmuch as Dr. Fennell,
when he delivered the slaves to Mrs. Henry, his daughter, took
from her a note, bearing interest, for the estimated value, this
proves the transaction was a·sale, and parol evidence can not
be received to prove it was intended as an advancement. *Grey
v. Grey*, 22 Ala. 233, is relied on in support of this position.
The point actually ruled in that case was, that a note executed
by the child to the parent was evidence of a debt, and was not
evidence of an advancement. This question was raised on the
record, and was correctly ruled. Certainly, the giving of a
note, which is evidence of a debt due from the child to the
parent, is, *per se*, no evidence of a gift or advancement from
the parent to the child. *Prima facie*, it is the very opposite.
The court, in that case, went farther, and said, parol evidence
will not be received to show that, at the time the note was
taken, it was intended the transaction should be an advance-
ment, and that the note did not represent a debt to be paid.
The court had said: "The bill of exceptions does not set out
the parol evidence given in the court below, and, consequently,
we can not say that it erred in receiving it." What the court
said in regard to receiving parol evidence of the parent's inten-
tion was consequently *dictum*.

*Gilbert v. Wetherell*, 2 Sim. & Stu. 254, presents the case of
a father who furnished his son ten thousand pounds to engage
in trade, and took his note for the sum, payable on demand.
The business not prospering as the son had expected, he wished
to withdraw from it, but continued in business at the request
of his father. On his death-bed, the father had the note
destroyed. *Held* an advancement, with which the son was
chargeable.

In *Stewart v. The State*, 2 Har. & Gill, 114, the court said:
"The well-settled rule of law, that parol evidence can not be
offered to explain, contradict, or add to the terms of a written
contract, which, it was contended, precluded the appellant from
going into extrinsic evidence to show the true character and
design of the bill of sale, we do not think applicable to the
question before us. No effort is here made to impeach or
defeat the title transferred by this conveyance, or to alter or
impair the rights of the *cestui que use* under it, as far as relates

to the property which it professes to convey; but the inquiry is into the title of the parties to other property, in which this bill of sale is incidentally used as evidence, and comes, as it were, collaterally in question. If the door to such an examination were excluded, the provisions of the act of 1798, respecting advancements, would become a dead-letter in most cases, when written instruments are used to give validity to the settlements intended; as it most rarely occurs that some money consideration is not expressed in the deed. If such a barrier to the discovery of truth and the administration of justice were to be sanctioned, it would be contrary to the whole scope and design of those just, important and salutary principles of our government, which provide for an equal distribution of an intestate's estate amongst all his representatives. It would, in effect, repeal one of the wisest and most wholesome provisions of our testamentary system." So, in this case, the testimony offered was not intended to affect the title to the slaves, turned over by Dr. Fennell to his daughter. The sole purpose was to affect her claim to other property.

In *Powell v. Powell*, 5 Dana, 168, the advancement alleged was a tract of land conveyed by father to son, on a recited consideration of five hundred dollars paid. Declarations of the father were received as evidence that it was an advancement. The court said: "The question here is not as to the operation of the deed, or the responsibility or obligation arising upon it, but as to the intention of the parties. And as the expression of a moneyed consideration may have been adopted for the mere purpose of showing the estimated value of the land, and fixing the responsibilities of the parties accordingly, without any money or property paid or to be paid by the grantee, we are of opinion that it should not be deemed conclusive evidence beyond that purpose. * * In this view of the subject, it would seem that the intention of conveying the land by way of advancement, is not necessarily inconsistent with the expression of a fixed consideration, and that it may, therefore, be proved by parol."—See, also, *Shaw v. Kent*, 11 Ind. 80; *West v. Bolton*, 23 Ga. 531.

In *Clements v. Hood*, 57 Ala. 459, a married woman had executed a writing, found among the papers of the intestate, which, unexplained, imported an advancement made to her. We said: "Under the rules of the common law, such contract made by a married woman is void, and imposes no obligation, as a contract, on her. It could only amount to proof of an admission, made by her, that she had received such property. Such admission is not conclusive, but is, at most, evidence to be weighed. Any other legal evidence, contradictory or otherwise, should have been received, bearing on the question of ad-

[Fennell v. Henry.]

vancement *vel non.*" · Speaking of the policy and purpose of our statute on the subject of advancements, this court, in *Mitchell v. Mitchell,* 8 Ala. 414, said, its theory is, "that every parent wishes to do equal justice to his children, and that money or property given to them during his life is, and was intended, as a part of their portion, unless he manifests the contrary at the time, or unless such presumption arises from the nature of the gift or expenditure."

In this case, the testimony is very strong and very full, that when Dr. Fennell gave the possession of the slaves to Mrs. Henry, he intended they should be her property, and that she should not pay for them during his life. She could not pay for them, for she had no property other than the slaves given, with which to make payment. The note, as a promise to pay, was void, for she could make no binding contract to pay money. It was, at most, an acknowledgment; in this case, probably acknowledgment of value. Mrs. Fennell testifies they were to be accounted for in final distribution, as part of Mrs. Henry's distributive share. In these respects, Mrs. Henry's understanding, as testified by her, was not materially different from that of her mother. This constitutes advancement, although the word *advancement* may not have been used. The law regards the substance, not the names of things. We may add, that many witnesses testify to admissions by Mrs. Henry, confirmatory of the theory, that she was to be charged with the slaves in distribution. Her remark to her mother, when she executed the receipt, that she did not believe those who would wind up the estate would charge her with the negroes, shows that she even then thought she should be charged with them in distribution, but for the fact that slaves had been emancipated. That she trusted or hoped would relieve her. In this she was mistaken. The advancement being made in 1859, abolition of slavery in 1865 did not relieve her. The loss was her loss.

The case of *Terry v. Keaton,* 58 Ala. 667, is distinguishable from this. The note which was sought to be varied by parol proof in that case, was a binding personal contract on the husband, and the question arose in a direct proceeding, based on the note as a valid money obligation. Though void as a promise to pay by Mrs. Keaton, it nevertheless operated a charge on the lands. In this case, the note is absolutely void as a money obligation, binds neither person nor thing, and it is no part of the purpose of the suit to obtain a recovery based upon it. As we have said, the purpose is to affect the right to other property,—not the slaves, on account of which the paper was executed.

The remark of Dr. Fennell, testified to by Mrs. Henry, that in the event of emancipation of the slaves, he did not intend to

[Fennell v. Henry.]

hold Mrs. Henry accountable for the slaves he had given her, was but an unexecuted intention to release, and does not amount to a discharge. A gift or gratuity, to be binding, must be completely executed.—2 Brick. Dig. 40, §§ 1, 2, *et seq.*

We have shown above that Mrs. Henry's note is to be treated only as an acknowledgment. As a promise to pay, it is absolutely void. Hence, as a promise to pay interest, it is inoperative, and the question of interest on the advancement must be determined by the law. No interest must be charged.—*Krebs v. Krebs*, 35 Ala. 293. We need scarcely add, that the question we have been considering must be determined without any reference to the surrender of the note by Mrs. Fennell, and its destruction by Mrs. Henry.

What is written above is the individual opinion of the writer. Not a conclusive conviction, for he has some misgivings on the subject. Still, he prefers the result his argument leads to, because, in his opinion, it clearly appears that Dr. Fennell did not intend the transaction should be a gift of the slaves, not to be accounted for, and did not intend it to be a sale, the slaves to be paid for as in ordinary cases of sale. It can not be treated as a sale, for Mrs. Henry had no capacity to make the purchase, or to bind herself. All men are presumed to know the law; and hence we must presume Dr. Fennell knew that the note of his daughter, Mrs. Henry, was, as a contract to pay money, utterly null and void. If, then, it be not an advancement, there is but one remaining possible category—namely, that it was intended as an absolute gift, not to be accounted for in distribution. So, my judgment is, in fact, the result of the logical process of reasoning by exclusion.

My brothers, however, differ with me, and hold that because the transaction was evidenced by what in form is a promissory note, parol evidence can not be received to show an intention different from that evidenced by the giving of the note. They adhere to the rule asserted in *Grey v. Grey*, 22 Ala. 233, " that if a written instrument is perfect in itself, it must be the sole expositor of the intention of the parties to it; and parol proof of an agreement between them, not reduced to writing, which is repugnant to the terms and intentions expressed in the written instrument, can not be allowed." They think that principle applicable to such a case as this. They refer to the following authorities in support of their views: *Terry v. Keaton*, 58 Ala. 667.

The result is, that the decree of the chancellor is affirmed.