## Ensley *v.* Ensley.

### (*Jackson.* June 20, 1900.)

1. WILL. *Testator's intention.*

   "The intention of the testator is the pole star in the construction of a will." To ascertain this intention the Court looks to the whole will, the circumstances and environments of the testator, the state and condition of his family, the size and extent of his estate as he believed it to be, etc. (*Post, p. 122.*)

   Cases cited: Jones *v.* Hunt, 96 Tenn., 372; Hottell *v.* Browder, 13 Lea, 678; Thompson *v.* Gaut, 14 Lea, 313; Fraker *v.* Fraker, 6 Bax., 350; Hoover *v.* Gregory, 10 Yer., 444; Dixon *v.* Cooper, 88 Tenn., 177; Fry *v.* Shipley, 94 Tenn., 252; Oldham *v.* York, 99 Tenn., 77; Henderson *v.* Vaulx, 10 Yer., 34; Ganaway *v.* Tarpley, 1 Cold., 527; Bunch *v.* Hardy, 3 Lea, 547.

2. SAME. *Trust arises upon precatory words, when.*

   In order that precatory words in a will may raise a trust, it is essential that it shall appear (1) that the words are, upon a fair construction, imperative; (2) that the subject of the wish or recommendation be certain; (3) that the objects or persons intended to have the benefit of the wish or recommendation be certain. (*Post, pp. 119, 120.*)

   Cases cited: Anderson *v.* McCullough, 3 Head, 614; Clark *v.* Hill, 98 Tenn., 300; Woods *v.* Woods, 99 Tenn., 60; Frierson *v.* Presbyterian Church, 7 Heis., 684; Thompson *v.* McKissack, 3 Hum., 631; Burks *v.* Burks, 7 Bax., 356; Anderson *v.* Hammond, 2 Lea, 281; Alsup *v.* Clarke, 15 Lea, 75; Hadley *v.* Hadley, 100 Tenn., 446; Cruse *v.* McKee, 2 Head, 1.

3. SAME. *Same. Example.*

   These precatory words contained in a will, to wit: "I want to give my wife an executrix's power to give out of my estate, before division, as much as $15,000 of bequests to my kinfolks, say to Melville Williams $5,000 or $10,000, in her discretion, and the balance to some one else who may be needy," does not raise a trust without affirmative action on the part of the

executrix naming beneficiaries and fixing amounts, except as to $5,000 to Melville Williams, which latter recommendation is held, in view of the testator's environments and relations to Williams, to take effect without any action on the part of the executrix. (*Post, pp. 117–124.*)

4. SAME. *Interest on legacies.*

The general rule is that a legacy bears interest from the expiration of one year after testator's death, even when its enjoyment is postponed to a future date. But under the provision of the will in this case, setting apart a fund and impressing it with a trust in favor of Williams for $5,000, to be paid before distribution, the legacy bears interest from testator's death. (*Post, pp. 124, 125.*)

Cases cited; Darden v. Orgain, 5 Cold., 215; German v. German, 7 Cold., 183; Mills v. Mills, 3 Head, 708; Harrison v. Henderson, 7 Heis., 348.

5. SAME. *Children charged with sums advanced by executrix for their support without interest.*

Where a testator provides for equal distribution of his estate among his two children and widow, making the latter his executrix and allowing her a support out of the estate during the course of administration, and then provides for his two children thus: "I give her [the executrix] five years to wind up my estate, but, in the meantime, she must give to Martin and Hattie each $250 per month to live on," the children will be charged, on final distribution, with all sums advanced under this clause for their support, but without interest. (*Post, pp. 125–129.*)

6. SAME. *Widow takes absolute estate, when.*

The testator's widow takes an absolute estate, not charged with any trust in any event in favor of the after-born child, under the following provision, to wit: "Should my wife give birth to a child in the next eight months, and the child should live, I will and devise to her (she to provide for the child) my residence, together with all furniture of every kind, carriage horses and carriages, etc., . . . and, after that, one-third of all my other property of every kind. In the event the child should not live, say twelve months, then I give her my residence, etc., if she desires it, but she must take of my property her one-third less the value of the residence, etc." (*Post, pp. 129, 130.*)

Ensley v. Ensley.

7. SAME. *Child is pretermitted, when.*

And the child having been born as anticipated, and not having been disinherited by the will, nor any definite, certain, and enforceable provision made for it, but one dependent on the will and bounty of the widow, is pretermitted, and, under the statute, "succeeds to the same portion of the testator's estate as if he had died intestate." (*Post, pp. 129–131.*)

Code construed: §3925 (S.); §3033 (M. & V.); §2193 (T. & S.).

8. SAME. *Method of ascertaining share of pretermitted child.*

In ascertaining the distributive share to which a pretermitted child is entitled, dower, homestead and year's support will not be excluded from the fund for distribution, where the widow has waived these rights by taking a different provision made by the will. (*Post, pp. 131–133.*)

9. SAME. *Same.*

The amount or value of special or specific devises and legacies must be taken into account in computing the share of a pretermitted child; and, in raising a fund to pay the share of a pretermitted child, each devisee or legatee must contribute in the proportion that the value of his devise or legacy bears to the value of the entire estate for distribution. (*Post, pp. 132, 133.*)

Code construed: § 3926 (S.); § 3034 (M. & V.); § 2194 (T. & S.).

10. SAME. *Time allowed for winding up estate.*

A provision in a will allowing the executor five years to wind up the estate does not fix an arbitrary limit upon the administration, but is to be construed rather as an extension of the statutory period. It does not require the removal of a competent and faithful executor because he has been unable to wind up the estate within the time allowed. (*Post, pp. 133, 134.*)

11. ATTORNEY AT LAW. *Fees of not allowed out of general fund, when.*

An attorney who files a bill for some of the legatees and devisees against the executor and other legatees and devisees, to obtain a necessary construction of the will and distribution and settlement of the estate, will not be allowed fees for his services out of the general estate, but must resort to the shares of his

Ensley *v.* Ensley.

own clients, where the defendants likewise had counsel and became liable for their fees. (*Post, pp. 135, 136.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

GEO. GILLHAM for complainant.

HENRY CRAFT, WRIGHT & WRIGHT, and CARROLL & McKELIAR, for defendants.

WILKES, J. This is a bill to construe the holographic will of Enoch Ensley, deceased. It was made and published July 7, 1890, and the testator died November 18, 1891. The will was probated in Shelby County November 24, 1891. Mary L. B. Ensley, the widow of the testator, qualified as his executrix, and has been acting as such ever since the probate of the will, and the settlement of the estate is still pending. The testator left one son, Martin, and one daughter, Hattie, children of a former marriage, and one son, Enoch, born within eight months after the will was made and before the father died. The defendant, Mary Beecher Ensley, was born after the death of her father. All the children are alive. Martin Ensley was married to Bettie S. Ensley,

and Hattie Ensley, after the making of the will, married John Hodgson, and is now his wife. Martin Ensley had two children by his wife Bettie—the complainants, Laura S. and Martin Ensley, Jr.—and Mr. and Mrs. Hodgson have one child, Harriet Ensley Hodgson, and all of said grandchildren are minors.

The will is in the following words and figures:

"I make this my last will and testament. I am of sound mind and body sufficient for the purpose.

"I want my property of all kinds to be divided between my wife, Mary L. Beecher Ensley, my son, Martin Ensley, and my daughter, Hattie Ensley, as follows:

"Should my wife give birth to a child in the next eight months, and the child should live, I will and devise to her (she to provide for the child) my residence, together with all furniture of every kind, carriage horses and carriages, etc., on the corner of Rayburn Avenue and Broadway, and after that one-third of all my other property of every kind.

"In the event the child should not live, say twelve months, then I give her my residence, etc., if she desires it, but she must take of my property her one-third, less the value of the residence, etc. The remainder of my property I give to my son and daughter equally, or, say, one-third of the whole each.

"I appoint my wife sole executrix to execute this will, and I give her power to sell and make title to any of my real estate, particularly my Mississippi river plantations. I, however, except a tract of land of 111 acres, more or less, adjoining the city of Birmingham. This land I don't want sold, but I want it divided equally in value into three parts to my wife, son, and daughter—my son and daughter's part to go to them during their lives, and then to the heirs of their body, but my wife's part to go to her during her life, and should she have no child by me, then I want my two children or their children to take her part. Should either of my children die without heirs of their body living, I want the other child, or her or his children, my wife's child (if she has any by me) to take equally of this land, or, say, one-third of this land so left.

"I have spoken of all my property to be divided in this will so far without making any outside bequests. I want to give my wife an executrix's power to give out of my estate, before division, as much as $15,000 of bequests to my kinfolks, say, to Melville Williams $5,000 or $10,000, in her discretion, and the balance to some one else who may be needy. I give her full power to spend what money she may desire in improving burial grounds and the erection of suitable monuments, etc.

Ensley v. Ensley.

"I want no bond required of my executrix. I have all faith that she will do everything that is right by my son and daughter. I give her five years to wind up my estate, but in the meantime she must give to Martin and Hattie each $250 per month to live on. I don't want bond required of my wife as executrix. Witness my hand and seal.

"J. M. TREZEVANT,           ENOCH ENSLEY."
"NAPOLEON HILL,
        "Witnesses."

It appears that Martin Ensley was divorced from his wife, Bettie, and conveyed to W. A. Wheatly, as trustee for her and their children, Laura S. and Martin Ensley, Jr., a third part of his share in the estate. Bettie Ensley has since intermarried with Geo. C. Henry, and M. L. Selden has succeeded Wheatly as trustee of the children, upon the latter's resignation. Mrs. Bettie Henry (formerly Ensley) purchased another third interest of Martin Ensley, Sr., in his father's estate, and is thus the owner of two-thirds of the interest of Martin Ensley, Sr., and Mr. and Mrs. Hodgson have purchased, and now own, the other third interest of Martin Ensley, Sr., in the estate.

Hattie Ensley, at the death of her father, was a minor, dependent for her support upon her father, with no means or estate of her own. It

21 P—8

appears that it required $3,000 per annum each for the support of both Martin and Hattie in the style and station in which they lived as members of their father's family at the time of his death. For a time the amount specified in the will of $250 each per month was paid by the executrix for the support of the children, when, the funds becoming exhausted and the estate involved, the payments were not continued.

The proof shows that the defendant, Melville Williams, is a nephew of Enoch Ensley, and that the relations existing between the said Melville Williams and the said Enoch Ensley were most intimate and friendly; that Enoch Ensley loaned Melville Williams money at any and all times, and when he was away from Memphis he corresponded with him in the most affectionate terms.

It is further agreed and stipulated that the executrix, Mary L. B. Ensley, did not, during the five years in which she was given to wind up her husband's estate, exercise the discretion with which she was vested to give Melville Williams, or any of the kinfolks of Enoch Ensley, deceased, any sum of money whatever, and that now the said Mary L. B. Ensley declines to exercise this discretion in favor of giving the said Melville Williams or any of his kinfolks any amount of the money under the will of Enoch Ensley, Sr., and that she likewise declines to exercise her discretion not to give them any sum

Ensley *v.* Ensley.

of money, but asks the Court to determine this question for her as a matter of law. The bill prays the Chancellor to construe the will of said Enoch Ensley in the following matters:

1. What share does Enoch Ensley, Jr., the minor son of Mary L. B. Ensley, take in his father's estate?

2. Whether or not Melville Williams is a legatee in the estate of the said Enoch Ensley.

3. Whether or not Mrs. Harriette Ensley Hodgson and Martin Ensley should have the sum of $250 per month from the date of the death of the testator up to the end of five years given to the executrix in which to wind up the estate, and as to whether or not the sums actually paid and to be paid under this clause of the testator's will should be charged against them on the final settlement, as part of their shares.

4. Whether or not Mary L. B. Ensley, as executrix of the estate of Enoch Ensley, deceased, is by the will vested with power to act as said executrix after the expiration of the five years given to her in which to wind up the estate.

5. What interest in the estate has the minor, Mary Ensley, who was born after her father's death?

The Chancellor construed the will and fixed the rights of the parties, and the case is brought to this Court by several of the parties interested, and it becomes necessary to pass upon the entire

will and the contentions raised in regard to it. The Chancellor held, among other things, in substance:

That Enoch Ensley, Jr., took no interest in his father's estate, and that the only provision made or intended to be made for his benefit was such as he might derive through the provision made for his mother, or through her.

That Melville Williams was entitled to a specific bequest of $5,000, with interest from November 19, 1891, a year after the testator's death, and that to the extent of $5,000 the legacy in no way depended on the discretion of the executrix, but that she had the power to increase it to $10,000; that no trust was created in favor of said Williams or any other person designated as kinfolks, and that, tested from the standpoint of a trust, the provision must fail for indefiniteness, and that the provision was inoperative, except so far as it resulted as a direct bequest or legacy to Melville Williams of $5,000.

That the provision in the will directing the payment of $250 per month to Martin and Hattie Ensley to live on should be so construed as to make the same advances upon their shares before distribution, and that the sums paid under this provision must, in the final distribution of the estate, be charged against these shares respectively.

That Mary L. B. Ensley is, by the will, vested with power to sell all and any real estate

Ensley *v.* Ensley.

of the testator and make good title to the same, except the 111 acres of land near Birmingham, Alabama, which was directed to be divided and not sold, and that her functions, powers, and duties did not cease at the end of five years from .her qualification, but would continue in her until she should be discharged by the Court.

That Mary Beecher Ensley, being a posthumous child, took the same interest in the estate of her father as if he had died intestate, which was designated as one-fourth of the estate, real and personal, remaining after taking out the dower interest of the widow and her homestead interest, and a child's share, or one-fifth of his personal estate, her share to be made up by the other legatees and devisees under the will, in proportion to their respective legacies and devises.

We proceed to examine the several assignments and questions presented without special regard to the order in which they are presented, and, first, as to the rights of Melville Williams. The provision of the will in regard to him is as follows:

"I have spoken of all my property to be divided in this will so far without making any outside bequests. I want to give my wife an executrix's power to give out of my estate before division as much as $15,000 of bequests to my kinfolks, say, to Melville Williams $5,000 or $10,-000, in her discretion, and the balance to some one else who may be needy."

The Chancellor held that the only rights that Melville Williams had were by way of a specific bequest, and that this claim under the will, tested from the standpoint of a trust, fails altogether, and that, therefore, the language of this clause of the will, further than it operates as a direct bequest or legacy to Melville Williams for $5,000, must fail and become inoperative.

The argument 'for Mr. Williams is that the sum of $10,000 was set apart by the testator out of his estate and impressed with a trust in his favor, and that $5,000 was absolutely devoted to his use and benefit, and the discretion of the executrix extended only to the additional $5,000. In this connection it is conceded the balance of the $15,000 over the $10,000 not given to Mr. Williams must fail because of indefiniteness, but it is insisted that Mrs. Ensley having failed to exercise her discretion by giving the $10,000 to Mr. Williams, a Court of Chancery would do so upon application.

It is argued, on the other hand, that under the item of the will now under consideration no specific bequest was made to Melville Williams of $5,000 or any other amount, nor was there a trust impressed upon $10,000, or any other amount, in his favor capable of enforcement. The language, it is admitted, implies that the testator desired that something should be done for his relatives, but it is said that it also implies that he in-

tended to leave it entirely to his executrix to give or not to give, as in her discretion she might see proper. It is noted that Melville Williams is not designated with specific certainty as the party to receive anything, but the language used is, "$15,000 of bequests to my kinfolks, say to Melville Williams $5,000 or $10,000, in the discretion of the executrix, and the balance to some one else who may be needy." It is added by counsel that it is difficult to surmise why, if the testator desired to give Mr. Williams $5,000 absolutely, he did not do so by express direction and positive, definite language, and the contention is that the natural meaning of the language used is that the whole matter of the gift was left to the discretion of his wife, in whom he appeared to have unbounded confidence and trust.

It is said by Pomeroy, in his second volume of Equity Jurisprudence, Sec. 1016:

"In order that a trust may arise from the use of precatory words, the Court must be satisfied from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as fully complete, settled and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner. The intention of the testator is the main thing, but how is that to be determined? In the first place, the entire will should be considered in de-

termining the intention, and the precatory words should not only be of such a character as to indicate that the testator intended a trust to be created, but they must also be consistent with the other provisions of the will. Secondly, the words should be given their natural and ordinary meaning, unless there is something to show that they were intended to be taken in a different sense. In the third place, discretionary expressions which leave the application of the property devised or bequeathed to the caprice or unlimited discretion of the beneficiary will not ordinarily be sufficient to create a trust; and, finally, it may be said that, while uncertainty in the subject or object of the devise is an object to be considered adversely to the trust, such uncertainty will not necessarily be conclusive proof that no trust was intended to be created, and if there is sufficient to enable the Courts to determine and carry out the intention of the testator, they will do so."

. It has been well said in our own State that a trust is created, first, if the words are so used as to be imperative , upon a proper construction; second, if the subject of the recommendation or wish is certain; third, if the objects or persons intended to have the benefit of the recommendation or wish be also certain. *Anderson* v. *McCullough*, 3 Head, 614; 27 Am. & Eng. Enc. Law, p. 38.

The recent cases of *Clark* v. *Hill*, 14 Pickle,

Ensley v. Ensley.

300, and *Woods* v. *Woods,* 15 Pickle, 60, 63, are cited as being in point and controlling, and many other cases are cited, among them being: *Frierson* v. *Presby. Church,* 7 Hies., 684; *Thompson* v. *McKissack,* 3 Hum., 631; *Burks* v. *Burks,* 7 Bax., 356; *Anderson* v. *Hammond,* 2 Lea, 281; *Belle* v. *Hardy,* 1 Vesey, 269; *Randall* v. *Randall,* 135 Ill., 398 (S. C., 25 Am. St. Repts., 373); *Howard* v. *Caruse,* 109 U. S., 725; *Harrison* v. *Harrison,* 44 Am. Dec., 364, 377; *Knox* v. *Knox,* 48 Am. Rept., 487, 494; *Lennes* v. *Darden,* 5 Florida, 74; *Laurence* v. *Cook,* 104 N. Y., 638; *Williams* v. *Milhington,* 49 Md., 572 (S. C., 33 Am. Repts., 286); *Harper* v. *Phelps,* 21 Conn., 257; *Foose* v. *Whitmore,* 82 N. Y., 405 (S. C., 37 Am. St. Repts., 572); *Oliffe* v. *Wills,* 130 Mass., 221; *McIntyre* v. *McIntyre,* 123 Pa. St., 329 (S. C., 10 Am. St. Repts., 529); *Nichols* v. *Allen,* 130 Mass., 211; *Ellis* v. *Ellis,* 15 Ala., 296; *Polk* v. *Polk,* 10 Simmons, 5; *Ex parte Payne,* 2 Young & Coll., 646; Perry on Trusts, Secs. 1161, 113, 115; Pomeroy's Equity Jurisprudence, Sec. 1015, and authorities there cited.

The difficulty in the case is not so much in declaring the principles of law involved or in laying down a general rule, as it is in applying the rule as recognized to the facts of the particular case, inasmuch as each case must turn largely upon the phraseology used, whether it is used

technically, or by a skilled draftsman, or by an inexperienced one not employing apt language. After all, the intention of the testator must be the controlling feature, and one cannot read this provision of the will in the light of the testator's environments without concluding that he intended his nephew to have $5,000 out of his estate before division, and this executrix, if she saw proper, might increase it to $10,000. It has been wisely said: "The intention of the testator is the pole star in the construction of a will." *Jones* v. *Hunt,* 12 Pickle, 372; *Hottell* v. *Browder,* 13 Lea, 678; *Smith* v. *Bell,* 6 Peters, 75; *Colton* v. *Colton,* 127 U. S., 309; *Thompson* v. *Gaut,* 14 Lea, 313; *Fraker* v. *Fraker,* 6 Baxter, 350; 3 Milliken's-Meigs' Dig., Sec. 2740, subsecs. 1, 2; 4 Kent, *535, and *557; 2 Story's Eq. (10th Ed.), Sec. 1074f; Pritchard, Sec. 384.

In the agreed statement of facts filed it is admitted this will was written wholly by Col. Ensley; that at the time he made it he considered himself a very wealthy man, perhaps worth more than a million of dollars; that Mr. Williams was his nephew, of whom, as well as of his family, he was very fond; that he was on the most intimate relations with the said Melville Williams; that they corresponded habitually; that the testator took the deepest interest in the material affairs of Mr. Williams; that he loaned him money, or gave him money, and that, out-

side of his immediate family, there was no one that the testator held in more esteem or was nearer or dearer to him; that he looked after the education of Mr. Williams' children, one of whom was named for him; that he visited him in his home, near Nashville, it being the old family homestead of the Ensleys; that he had a room kept for him there; that he often expressed a purpose of providing for Mr. Williams in his will.

The language used in this legacy is quite informal, and it must be read, keeping in view that it is not that of a lawyer or skilled draughtsman. It clearly implies that the testator intended to set apart out of his estate, before division, a sum of $15,000 to go as bequests to his kinfolks. This sum is not given to his executrix or any one else, but is set apart out of his estate. That a discretion was placed in his executrix to some extent cannot be doubted; whether it extended to the whole bequest to Melville Williams or to only $5,000 of it is a question of more difficulty. But looking at the bequest from the standpoint of the testator and construing his inartificial language as best we may, we are of opinion that a trust was impressed in favor of Mr. Williams to the extent of $5,000 of this bequest, and that a discretion was vested in the executrix to increase it in his favor to $10,000 if she saw proper. The provision for the balance of the $15,-

000 to go "to some one else who may be needy" is too indefinite for enforcement. *Anderson* v. *McCullough,* 3 Head, 617; *Colton* v. *Colton,* 127 U. S., 309.

The executrix having failed to execute this trust so far as it is obligatory and pay over this bequest of $5,000, a Court of Chancery will require it to be done. *Anderson* v. *McCullough,* 3 Head, 614; *Colton* v. *Colton,* 127 U. S., 309; *Alsup* v. *Clarke,* 15 Lea, 75; *Hadley* v. *Hadley,* 16 Pick., 446; *Cruse* v. *McKee,* 2 Head, 1; 1 Jarman on Wills, p. 680 *et seq.;* 27 Am. & Eng. Enc. Law (1st Ed.), 40, 41.

As to interest on it, the general rule is that legacies bear interest from the expiration of one year after the testator's death. *Darden* v. *Orgain,* 5 Cold., 215; *German* v. *German,* 7 Cold., 183; *Mills* v. *Mills,* 3 Head, 708. And this is true when the enjoyment of the legacy is postponed by the testator to a future period. *Mills* v. *Mills,* 3 Head, 705; *Harrison* v. *Henderson,* 7 Heis., 348. The case of *Harrison* v. *Henderson,* 7 Heis., 348, is in point. In that case the wording of the will was: "I do set apart out of my estate, in the hands of my executrix, the sum of $4,000, to be held by my executrix subject to the following trusts," etc. Judge Freeman, speaking for the Court on this point, said:

"This made Henderson testamentary trustee for this fund as soon as it could be raised, if not

on hand at the death of the old man. If it was on hand, then he would have immediately become the trustee, to hold the fund and its accumulations until the time when it could be paid over to the complainant at the death of her husband. We ·think it clear that this legacy bears interest from the death of the testator, as his intention certainly was that it should accumulate. The setting apart by his will shows the intention to be that it should take this direction from the date when the will took effect, and not be payable at the end of the year, as is the general rule in cases of pecuniary legacies."

· We are of opinion, therefore, that under the rule in the last stated case Melville Williams is entitled to be paid this legacy of $5,000 and interest out of the estate from the testator's death, before a distribution or division is made, but subject to its contribution to the shares of the pretermitted children, as hereafter declared.

As to the provision in the will relating to the bequest of $250 each per month to Martin and· Hattie Ensley, it must be considered wholly from the standpoint of arriving at the real intention of the testator. To do this we must look to the whole will, the circumstances of the testator, the state and condition of his family, the size and extent· of his estate as he believed it to be, and read the provision in the light of all these facts and environments. *Hoover* v. *Gregory,* 10

Yer., 444, 451; *Dickson* v. *Cooper,* 4 Pickle, 177; *Fry* v. *Shipley,* 10 Pickle, 252; *Oldham* v. *York,* 15 Pickle, 77; *Henderson* v. *Vaul,* 10 Yer., 34; *Gannaway* v. *Tarpley,* 1 Cold., 572; *Bunch* v. *Hardy,* 3 Lea, 547.

We think it was the evident original intention of the testator to divide his property into three equal shares and to give one to his son, one to his daughter, and one to his wife. But, in view of the probability of the birth of a child, and for the purposes of a home, the residence, furniture, carriages, horses, etc., were added to the share designed for the wife. He makes his wife his executrix, and his estate being large and consisting of mining interests slow of realization, he deems it proper to provide that she is to have five years in which to wind it up, instead of the two years and six months prescribed by law; but he was mindful that in the meantime there should be a fund out of which his children could receive their support and defray their current expenses. The provision under consideration was evidently made to meet this condition, and it was, it appears, upon the scale they had been accustomed to spend money for their support while the father was alive. He says nothing about charging · the payments against their shares. We think the most natural construction of the language employed, under the circumstances, is that these expenses were to be paid out of the estate

and as a charge upon it until such time as the estate could be divided and the children receive their portions in severalty. He recognized the fact that the children must be supported and maintained during that time and that his wife and executrix would have no power or authority to advance such support unless it was conferred by his will, and but for this or some similar provision, these children would for five years have been without means of support.

The provision is not an advancement in the sense of being a gift during the life of the parent in anticipation of what the children would receive on the death of their father, for it was not to be paid to them until after his death, and then only for their maintenance and support. It is a general rule recognized in many cases that money provided for education is not to be treated as an advancement, and, *a fortiori,* money provided for support and maintenance is not to be so treated. 2 Williams on Executors, 7 Am. Ed., 895-6, star p. 1291; Pritchard on Wills, Sec. 771; *White* v. *Moore,* 23 S. C., 456; *Estate of Riddle,* 19 Penn. St., 431; *Connor* v. *May,* 3 Strob. Eq. (S. C.), 185; *Boles* v. *Winchester,* 13 Bush, 1; *Fennall* v. *Henry,* 70 Ala., 484 (S. C., 50 Am. Rep., 88); *Bradshaw* v. *Cannada,* 76 N. C., 445. Such expenses as education and maintenance are incurred in the discharge of parental duty during the life of the parent.

*Bruce* v. *Griscom,* 70 N. Y., 612; *Cooney* v. *May,* 3 Strob. Eq. (S. C.), 185, 190; *Sanford* v. *Sanford,* 69 Barb., 293; *Miller's Appeal,* 40 Penn. St., 51 (S. C., 80 Am. Dec., 55). But while these cases are somewhat analogous to the one at bar, they are not conclusive.

The sums directed to be paid in this case are not in any sense advancements, but they are simply the current expenses of his children after his death and pending the winding up of his estate, and until such time as they might receive their separate shares upon a division of the estate, which the testator assumed would take five years. So the question still remains, Shall these amounts directed to be paid to Martin and Hattie be charged up against their shares upon the final distribution, although in the first instance they are to be paid out of the general estate? We think that the conclusion of the Chancellor as to this feature of the case is correct. It was evidently the expectation of the testator that his wife, having his estate in her hands, would take out of it, from time to time, enough for her maintenance and support during the time she was engaged in winding up the estate. Otherwise there is no provision for her support and maintenance during that time. But the children, having none of his estate, or of their shares, in their hands until the final distribution, he provided they should be paid $250 per month by the executrix

Ensley *v.* Ensley.

for their maintenance during that time, and thus that equality was preserved which the testator desired, and in order to maintain and continue that equality it is necessary to charge the amounts received by each on his or her shares respectively upon the final division and distribution, but without interest.

We are of opinion that Enoch Ensley, Jr., must be regarded as having been pretermitted by the will, as well as his posthumous sister, Mary Beecher. The only reference made to him is that in the event of his birth his mother should provide for him; but the only means given her out of which to make such provision is the residence, furniture, carriages, and horses, and even these are not given for that express purpose. While the value of these is not definitely shown, it is evident they are not the equivalent of a share in the estate, and we think it apparent that the testator intended thereby to provide a home for his children of the first and of the second marriage, as well as his wife. The child is only mentioned as it were incidentally, as a probability, in the will, and the only provision for him is in the parenthetical clause "(she to provide for the child)."

Now, under the language used, we are of opinion the wife took her share, including the residence, furniture, carriages, and horses, as her own, and she could dispose of them as she saw fit,

21 P—9

and there was no obligation on her to provide for the child, except so far as her own love or sense of duty might prompt, and that not out of the estate, but out of her share in it, and the shares of the other children would not be affected thereby. This is not a definite, fixed, enforceable provision for the child, and he must, therefore, be treated as pretermitted in the will. *Burns* v. *Allen,* 9 Pickle, 149. There is no specific, definite obligation fastened on the mother, and no trust imposed on the estate in favor of the child, and, at most, the provision is a mere statement that the mother will provide for the child. The testator does not directly or inferentially disinherit him, but indicates solicitude for him. He does not use any such expressions as, under the statute, would disinherit the child, and he must take, therefore, as in cases of intestacy. The statute (Shannon, § 3925), provides: "A child born after the making of a will, either before or after the death of a testator, not provided for nor disinherited, but only pretermitted in such will, and not provided for by settlement made by the testator in his lifetime, shall succeed to the same portion of the testator's estate as if he had died intestate."

The statute contemplates an enforceable, definite, and certain provision, and not one dependent on the will or bounty of another.

There is no serious question made but that

Ensley *v.* Ensley.

Mary, the posthumous child, must be treated as pretermitted and entitled to take, under the statute, as if the father had died intestate, and, in our view, Enoch must be placed on the same footing.

A very difficult question is the basis upon which these children's shares shall be estimated. The statute says they shall take the same share as if the father had died intestate. The literal application of this provision would require that the widow's dower, · homestead, and year's support should first be excluded from computation of the aggregate estate, and an equal · share in the remainder be given to the pretermitted children. But the widow has not taken dower and homestead, or other interest under the law, but, on the contrary, has taken under the provisions of the will. If the dower, homestead, and year's support are excluded from the estimate, it is said it can be only on the theory that they go to the widow. But it is evident a widow cannot be compelled to take dower and homestead, or either of them, but may elect to take under the will, as she has done in this case; not only so, but she may renounce and disclaim all right to dower, homestead, or other interest that the law gives her as widow in the estate, which are to be paid primarily out of the estate, and leave the whole of it for division, and, in the opinion of the majority of the Court, · this is what has been

done in this case, and the two pretermitted chil-
dren are entitled to take as if there had been
no will and the widow had renounced her right
to dower, homestead, and year's support in the
estate—that is, each takes one-fifth of the entire
net estate. As to how these shares shall be made
up presents also a question of practical difficulty
under the facts in this case. The statute pro-
vides (Shannon, § 3926): "Toward raising the
portion of such child, the devisees and legatees
and other heirs shall contribute out of the part
devised, or bequeathed to, or settled on them by
the testator, in the proportion borne by their re-
spective devises, legacies, or settlements, to the
whole estate of the testator."

The Court is of opinion that, in order to de-
termine the shares of the pretermitted children,
the net estate, after payment of debts and ex-
penses, must be treated as a whole, embracing
in this whole the residence, furniture, carriages,
and horses given to the widow and the special
legacy to Williams, and the pretermitted children
will be entitled to take, with the widow and
other children, one-fifth of this aggregate sum as
his or her share.

But the widow and two older children and
Williams must raise their shares out of their leg-
acies and devises in the proportion which their
portions bear to the whole estate, so that the
charge upon the widow's share will be increased

Ensley *v.* Ensley.

proportionately by the value of the residence, furniture, carriages, and horses, and to the extent that her share is thus burdened by an increase of charge, the effect will be that the shares of the older children and Williams will be proportionately relieved, and it will result that the shares of the pretermitted children will be greater than those of the other two, because the latter can have no interest in the residence, carriages, horses, etc., and the Williams legacy, while all of these are to be computed and taken into estimate in fixing the shares of the pretermitted children, under the law.

We can see no reason for removing the executrix from her office after the expiration of the five years' limit allowed by the will to wind up the estate. The record shows that she has been very energetic in discharging her duties, and the estate is not yet wound up. The testator was largely engaged in mining operations when he died, and his estate consisted of such assets as could not be realized on without delay and taking advantage of market conditions. Indeed, the estate may be said to have had a speculative and uncertain value, depending largely upon the iron market, which became so depressed as at one time to justify proceedings to wind up the estate as insolvent.

To have a change of administration now would but entail confusion and loss. No reason is given

for her removal. No desire is expressed for it, so far as we can see. The provision of the will does not fix an arbitrary limit beyond which the administration could not extend if necessary, but the five years provided for by the will was intended as an enlargement of the time allowed by law, the testator recognizing that the condition of his estate would at least demand that extension. This provision must, under all the facts, be treated merely as an expression of opinion on the part of the testator that the estate could not be wound up until that lapse of time, when distribution and division might be made, but that object not having been accomplished within the time, it is necessary and proper for the executrix to continue in the exercise of her duties for a longer period. But it is not meant by this to hold that she may delay the distribution of the estate any longer than is necessary for its proper administration, but such distribution should be made at such times and so often as may be practicable and expedient, and as rapidly as the condition of the estate may warrant and justify, leaving only such matters for future administration as may require time for proper disposition and handling.

As to the matter of counsel fees for complainants' attorneys: The bill is one to construe the will of Enoch Ensley and determine the rights of all persons interested therein *inter sese*. The

Ensley *v.* Ensley.

rights of all parties are involved, and the entire will must necessarily be construed. It is said the complainants who have filed this bill are only a portion of the parties interested. The widow and executrix, who represents the entire estate, does not bring the bill, but is a defendant to it.

The complainants claim the largest interest in the estate, and larger than the Court believes them to be entitled to. It is said that another bill has heretofore been filed to construe the will, and that counsel fees have already been allowed and paid in that. The suit referred to was one filed by a creditor on behalf of himself and all other creditors, and was for the purpose of administering the estate as insolvent, and at a time when it was with good grounds believed to be so. It appears that, while there was a broad prayer that the Court would construe the will in all respects, it was never in that case construed as to any of the matters involved in the present cause.

The condition of the estate has materially changed. The lapse of time and vicissitudes of fortune have completely changed the status of the estate. It is no longer an insolvent estate in which the rights of creditors are involved, but it is a solvent estate, with a surplus for distribution of perhaps a quarter of a million dollars. The suit was a necessity for all parties. It could and should have been brought by the executrix,

and in that event her counsel fees would have
been allowed her, no doubt. But, inasmuch as the
parties other than complainants have also to em-
ploy counsel to represent their interests, and they
incur fees, it would not be equitable or proper
to pay counsel fees representing one interest, and
not to pay others as vitally, if not so extensively,
interested.

The opinion of the Chancellor will be reversed
and modified as herein indicated, and in all other
respects affirmed, except that the entire costs of
the cause will be paid out of the estate, and the
cause is remanded for further action.

## SPECIAL DISSENT.

WILKES. J. With all due deference to the opinion
of the majority, I do not concur with them upon the
basis for estimating the shares of the pretermitted
children. I think the statute lays down a plain,
imperative rule to be applied in all cases, and
that is that the pretermitted child takes the inter-
est he or she would have taken if the deceased
had died intestate, and the rule and basis is the
same whether the widow takes her dower and
homestead and year's support and distributive share,
or does not take them. The basis is fixed by the
statute without regard to what the widow may
elect to do, and it is only under the statute and
according to its terms that the pretermitted child

can take anything. I am of opinion, therefore, that the true rule is that, in estimating the shares of such pretermitted child, the value of the dower, homestead, and year's support should be excluded, and not treated as a part of the aggregate fund in which the child may share. If the pretermitted children receive any benefit from the relinquishment of dower, homestead, and year's support, it is not under the statute, nor by virtue of its provisions, nor out of the testator's estate, but from the widow's relinquishment and bounty, and out of her share and interest in the testa-tor's estate under the law. The value of the widow's share as legatee does not stand on the same footing as her dower, homestead, and year's support, as she takes that on a division with the children, and not as a primary charge out of the estate before division.