GILPIN *et al. v.* BURRAGE *et al.*

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

Rehearing denied January 17, 1949.

GRIMM & TAPP, of Knoxville, for appellants.

82

ANDERSON & ANDERSON, of Knoxville, and TURNBULL & BERGH, of New York City, for C. M. Baxter, Jr., Mathew Andrews Baxter & Nancy McGhee Baxter.

WILLIAM P. O'NEIL and HOWARD F. JARVIS, both of Knoxville, for Janie Rambo Baxter.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

As the result of a controversy between actual or alleged beneficiaries as to which were presently entitled to certain income from a trust created by the will of Charles M. McGhee, the testamentary trustees properly filed this suit for construction of that will with reference to this controversy. It was heard on stipulation of facts.

The controversial item, being Item V, devises very valuable real estate in Knoxville in trust to three named trustees and their successors "to be held—in trust during the life time of" the testator's daughter, Mrs. Eleanor W. Neely, with authority and direction to rent it during her life and "pay over and distribute the net rents (equally)—to my three daughters" Mrs. Neely, Mrs. Tyson and Mrs. Margaret McGhee Baxter. Then follows the provision which produced the controversy. Its language is:—

"In the event of the death of any of my said daughters during the term of this trust, the share of the net income which she would have taken if living shall be paid to her surviving issue in equal shares per stirpes, or in default of issue shall be distributed to and among my remaining daughters and the issue of any deceased daughter, in equal shares per stirpes."

Mrs. Baxter, one of these three daughters, died in 1942 and left surviving her five children, who thus became entitled under Item V of the will to the payment of the rents to which their mother, Mrs. Baxter, would have been entitled had she lived until the termination of the trust by the death of Mrs. Neely, who is still living.

One of the five surviving children of Mrs. Baxter was her son, Charles McGhee Baxter. The trustees paid to him 1/15th of the net rents from the trust property from the time of the death of his mother in 1942 until his death in 1945. He left surviving him his widow, Mrs. Janie Rambo Baxter, and three children by a previous marriage. He willed all of his property to this widow.

The basis of the claim of this widow to the aforesaid 1/15th of the net rents of the trust property is stated in her answer to the trustees' bill in this language:—

"She as the widow of Chas. McGhee Baxter is entitled to the income of the estate of Chas. M. McGhee to the same extent her husband Chas. McGhee Baxter would have been entitled were he still living for the duration of the life of Eleanor W. Neely. In this connection respondent shows to the Court that she is the sole beneficiary under the will of Chas. McGhee Baxter."

The basis of the claim of the three children of Charles McGhee Baxter to this same rent is stated thus in their answer:—

"That the intention of the said testator was to provide by the said paragraph that the income from the said trust was to go exclusively to his descendants and blood relatives and that upon the deaths of his daughter Margaret McGhee Baxter and of any of her children, the share that such child would have been entitled to receive if living was to go to the issue of such child and that

accordingly the share of Charles McGhee Baxter upon his death goes to and is to be paid to the respondents, who are the issue of the said Charles McGhee Baxter.''

Mrs. Neely, through her conservator, and Mrs. Isabella Tyson Gilpin, the only child of Mrs. Tyson, deceased, (one of the three daughters of the testator) join in this bill as complainants. The remaining four children of Mrs. Margaret McGhee Baxter are defendants along with the widow and three children of Charles McGhee Baxter. These remaining four children of Mrs. Baxter seem to have taken a neutral attitude in this controversy, perhaps on the theory that their interests were not affected.

In due course the Chancellor filed his ''Memo. Opinion'', wherein he stated that his construction of the will of Charles M. McGhee and the disposition of the rent income in controversy is:—

''That the title to the trust income of the share going to Mrs. Margaret Baxter vested in her issue surviving at the time of her death, and that, therefore, the one-fifth share of said Charles McGhee Baxter'' (in his mother's share) ''became vested in him on his mother's death, and that his share became transmissible and passed under his will to his widow.''

This opinion was never made the decree of the Court. Subsequent to its filing, the three children of Charles McGhee Baxter and his widow, individually and as executrix, entered into an agreement which states that it is

''in respect to the payment of the income during continuance of the trust and the disposition of the principal upon the termination of the trust''.

By the terms of this agreement the widow is to receive $250.00 per month of the income ''from the trust that

would have been paid to the late Charles McGhee Baxter if he were living", and any excess thereof each year is to be paid "to the three Baxter children or to the issue of any who may die". If the widow be living when the trust is terminated by the death of Mrs. Neely, "the principal of the amount that would have been paid over to the estate of the late Charles McGhee Baxter, or to his issue" shall be paid to the trust department of a specified bank for investment, and out of the trust his widow shall be paid $250.00 per month "so long as she shall live", this payment to be made from the income if sufficient, with any deficit from the *corpus*. Any balance of net income of this new trust each year during the life of the widow shall be paid to the "three Baxter children", or to the estate of any one of them who may die. Upon the death of the widow this trust shall terminate "and the remaining principal thereof" shall be paid to the three Baxter children "or to the issue of any who has died".

This agreement then recites that the Baxter children "will not appeal from the decision rendered" by the Chancellor as to the construction of the will

"but the provisions of this agreement shall supplant such construction so far as payment of income is concerned and shall constitute a final determination of any question that may arise so far as the persons entitled to receive the principal of the said trust that would be payable to the estate of the late Charles McGhee Baxter or to his issue are concerned."

Upon the joint motion of the widow, Mrs. Baxter, and the three Baxter children this agreement was ratified and approved "and is hereby made the decree of the Court". The decree directed the trustees to pay that part of the income and *corpus* involved in accordance with the terms of this agreement.

86

The testamentary trustees or their successors and Mrs. Gilpin excepted to this decree and have appealed.

The first question made by appellants' assignments of error is that the Chancellor erred "in finding and adjudicating that the rights of the income of said Trust Estate created by said Charles M. McGhee to which said Margaret Baxter was entitled during her life time vested in the children of said Margaret McGhee Baxter upon the death of said Margaret McGhee Baxter", and, accordingly, in holding that any part of that income vested in charles McGhee Baxter upon the death of his mother Mrs. Baxter.

▮ The memo opinion filed by the Chancellor prior to the agreement in question was never made the decree of the Court. That memo opinion is, therefore ineffective for any purpose. *Fraker* v. *Brazelton*, 80 Tenn. 278; *Massachusetts Mutual Life Insurance Company* v. *Taylor Implement & Vehicle Co.*, 138 Tenn. 28, 195 S. W. 762. Therefore, insofar as the question stated is directed to what is said in the memo of the Chancellor, the point is not well taken. In fact, there is some inconsistency between the opinion of the Chancellor expressed in the memo and the directions contained in the decree which was actually entered.

The decree actually entered is one confirming an agreement entered into between the three children of Charles McGhee Baxter, as the one party, and his widow, as the other party, in compromise of their conflicting claims as to the correct disposition of the income from the *corpus* of the Charles McGhee Baxter portion of the trust under a proper construction of the McGhee will.

▮ The parties to this contract, being *sui juris*, had the authority to make any agreement they desired with

reference to the disposition of any income or *corpus* of the trust to which they individually were or might thereafter become entitled under this will, when properly construed. So, insofar as it affects the individual rights of the actual parties to that agreement, the decree confirming the agreement and making it binding upon those individuals, actual parties to the agreement, is not erroneous. It is the duty of the trustees to comply with it to that extent.

Probably the object sought to be accomplished by the appellants in making the question stated is to prevent the agreement of these parties as confirmed by the decree from becoming the law of the case so as to prejudice other persons, not parties to the agreement, whose rights now or hereafter are to be ascertained by what is the proper construction of the McGhee will, rather than by a construction resulting from a compromise by some, but not all of the individuals who are or may become interested in the proper disposition of the income from and *corpus* of this trust.

It is to be doubted that the Chancellor or the various counsel representing the various appellees intended by this decree to impose upon other interested parties not parties to the agreement the construction of the will which in effect results from their agreement as to how the Charles McGhee Baxter portion of the income from and *corpus* of the trust estate shall now or hereafter be distributed. However, the decree is capable of that construction. So, to that extent the point made by appellants' insistence is well taken. In response to that insistence, we hold that the decree be modified so as to limit ratification and confirmation of the agreement in question to those who were actual parties thereto, such rati-

fication and confirmation to be without prejudice to any one, except the actual parties to the agreement which the decree confirms, and those claiming through those actual parties rather than under the will.

The next question made by the assignments of error is that the Chancellor erred in failing to "decree that no part of the income of said Trust Estate created by said Charles M. McGhee vested in any of the beneficiaries under said Trust prior to the death of said Eleanor W. Neely".

■ ■ There is no controversy at this time as to whether the income from the trust estate does or does not vest prior to the death of Mrs. Neely, since the only persons presently affected by such a controversy have settled their differences in a manner satisfactory to them. Whether any such controversy will ever arise depends upon contingencies which may or may never happen. The question presented, therefore, is abstract. A bill will not "lie by a trustee to construe a will unless the court can afford immediate relief. The court will not declare future rights, or decide upon and determine contingencies which may or may not ever arise". *United States Fidelity & Guaranty Co.* v. *Askew*, 183 Tenn. 209, 213, 191 S. W. (2d) 533, 535.

Upon application of the attorneys representing the three Charles McGhee Baxter children, the Chancellor decreed these attorneys a fee of $3,000.00. Upon application of the attorneys representing Mrs. Baxter, widow of Charles McGhee Baxter, the Chancellor decreed these attorneys a fee of $3,000.00. The decree adjudges that the services of these various attorneys have been valuable to the trust estate and ordered that they be paid by that estate. The appellants insist that it was error for the Chancellor to charge the trust estate with these fees.

 Ordinarily one who did not employ an attorney cannot be required to pay that attorney a fee even though the services of the attorney may have been of value to such person. *Draper* v. *Draper*, 24 Tenn. App. 548, 553, 147 S. W. (2d) 759. An exception has been made at times with reference to legal services rendered in connection with the estate of a decedent or trust. Upon other occasions application for the payment of such fees out of the corpus of the estate or trust has been denied. Our cases seem to reflect it as a fact that the test by which the question is to be determined is whether the services rendered enure to the benefit of the entire estate as distinguished from services that enure to the benefit of one or more of the individuals interested in the estate or trust. The difficulty is in the application rather than in the ascertainment of the controlling rule.

Some of the leading cases wherein compensation has been allowed an attorney out of the corpus of the trust which did not employ him are *Smith* v. *Haire*, 138 Tenn. 255, 197 S. W. 678; *Vanderbilt University* v. *Mitchell*, 162 Tenn. 217, 36 S. W. (2d) 83; *Carmack* v. *Fidelity-Bankers Trust Co.*, 180 Tenn. 571, 177 S. W. (2d) 351. In each of these cases the services of such attorneys resulted in the preservation of the trust fund, the destruction or impairment of which was being threatened.

Some of the leading cases wherein compensation to be paid out of the corpus of the trust has been denied an attorney not employed by it are *Ensley* v. *Ensley*, 105 Tenn. 107, 58 S. W. 288; *Tramell* v. *Tramell*, 162 Tenn. 1, 32 S. W. (2d) 1025, 35 S. W. (2d) 574; *Shofner* v. *Porter*, 15 Tenn. App. 428; *Draper* v. *Draper*, *supra; Davis* v. *Mitchell*, 27 Tenn. App. 182, 178 S. W. (2d) 889. In *Tramell* v. *Tramell* and *Davis* v.

*Mitchell* the attorneys were asserting rights in opposition to the will, rather than under it. In *Draper* v. *Draper* the estate [24 Tenn. App. 548, 147 S. W. (2d) 762] "was neither created, increased, nor otherwise added to by such counsel". In *Shofner* v. *Porter* much of the services rendered by the guardian *ad litem* were in an effort to sustain issues decided adversely to their contentions. In *Ensley* v. *Ensley* the Court disallowed the fee for the reason that "parties other than complainants have also had to employ counsel to represent their interests, and incurred fees, it would not be equitable or proper to pay counsel fees representing one interest, and not to pay others as vitally, if not so extensively, interested". 105 Tenn. at page 136, 58 S. W. at page 294.

The services rendered by the various attorneys for the various appellees here were to their respective clients with reference to a controversy between their respective clients as to which of them were entitled to a certain portion of the total income and corpus of the trust estate. Those efforts did result in the settlement of that controversy between their particular clients. However, those efforts settled no legal question with which this trust may be confronted. They neither added to nor aided in preserving any part of the trust estate. They enured only to the benefit of their respective clients. Therefore, in application of the controlling rule, we are compelled to hold that the Chancellor erred in ordering payment of these fees from the trust estate. The decree is, accordingly, modified so as to reverse this holding.

This suit was instituted by the Trustees. The costs below were adjudged against the trust. We do not think, as insisted by the appellants, that this was error. That was a matter within the discretion of the Chancellor.

■ Some of the assignments of error made by the trustees on this appeal have been sustained; some denied. The costs of the appeal will be adjudged against the trustees to be paid from the trust funds.

The decree as herein modified is affirmed.

All concur.

### On Petition for Rehearing.

The single complaint made in this petition to rehear is that this Court erred in holding that it was not proper for the trust estate to be charged with the payment of the fees of the attorneys who represented the three children of Charles McGhee Baxter and the attorneys who represented his widow, Mrs. Janie Rambo Baxter.

Since none of these attorneys were employed by the trust estate no exception seems to be taken to our holding that the matter is to be determined in a case such as this by "whether the services rendered enure to the benefit of the entire estate as distinguished from services that enure to the benefit of one or more of the individuals interested in the estate or trust".

The petition seems to rely entirely upon *Vanderbilt University* v. *Mitchell*, 162 Tenn. 217, 36 S. W. (2d) 83. It says that our opinion in the instant case overrules that case. We did not so intend.

It is asserted by the petition that the *Vanderbilt University Case* "is the only case in this State, so far as we can find, dealing with a situation such as this" and that our opinion, in commenting upon the *Vanderbilt University Case*, was in error in saying that the services of the attorneys in that case "resulted in the preservation of the trust fund, the destruction or impairment of which was being threatened." The petitioners state that they

have re-read that case in view of our statement but are "unable to discover just how the 'destruction or impairment' of that fund 'was being threatened' ". It is apparently the opinion of counsel that this alleged misconception of the *Vanderbilt University Case* led this Court into the alleged error of holding that fees of the attorneys for the Baxter children and for Mrs. Baxter, respectively, were not chargeable to the trust estate.

In the *Vanderbilt University Case, supra,* the trustee filed an *ex parte* bill seeking not only a construction of the will but likewise a decree "approving a *proposed deviation* from the express directions of its creator, with regard to the investment of the principal and the use of the income". 162 Tenn. at page 220, 36 S. W. (2d) at page 84. (Emphasis ours.)

The will provided that the income from the trust should be used to assist poor boys residing in Georgia in obtaining an education at Vanderbilt. The trustee sought a decree permitting an "extension of the trust to the assistance of students from other states" in addition to Georgia, and likewise a decree permitting an investment of the corpus in securities other than those directed by the will. Therefore, it was sought by the bill to spend this income for persons other than those designated by the will as its beneficiaries. For this reason, in our opinion in the instant case we defined this effort as being a threat at impairment of the trust fund. If a worthy poor boy from Georgia had made application for assistance from this fund and had been told that his application would have to be denied because the money had been used to help poor worthy boys in Tennessee or New York, it would not be surprising if this Georgia boy agreed with the definition used in our opinion.

Since the bill in the *Vanderbilt Case* was filed *ex parte,* the Court thought there was need for an *amicus curiae.* Thereafter, heirs at law and next of kin of the testator were made defendants and were represented by an attorney. Their demurrer, through this attorney, to that part of the bill which sought to divert investment of the corpus from securities directed by the will was sustained. That amounted to a preservation at least of the wishes and directions of the testator.

The trustee, through its attorney, procured a construction of the will. It does not appear to what extent assistance therein was made by the other attorneys, but evidently the other attorneys resisted the effort of the trustee to spend the income on persons other than those designated as beneficiaries, and thereby assisted in preserving the trust for those for whom the testator said it was to be used.

The services, therefore, of each of the attorneys connected with this case were so obviously for the protection of the trust for the uses and purposes specified and intended by the testator and for the prevention of material deviations from those directions, that the trustee consented to the allowance of the fees and this Court held that such consent was proper since all these attorneys had contributed "to the preservation and proper execution of the trust."

In the instant case the children of Mr. Baxter and the widow of Mr. Baxter became involved in a controversy as to which was entitled to 1/15th of the income from this trust estate, and finally to 1/15th of its corpus. The remaining 14/15ths of this estate and its income was not involved in this controversy, except as a decision therein might (not would) concern them at some future time;

and then only in the event they, or some of them, should at some future date happen to find themselves in the same family situation as that which produced the controversy between the children and widow of Mr. Baxter.

In this situation, the trustee, as is usual in such a case, asked the Court to tell him what to do, and in the course of a proceedings resulting from that formal request, the Baxter children and the widow and their attorneys said to the Court that they had settled their controversy in a manner satisfactory to themselves and asked the Court to make that compromise settlement the decree of the Court. This was done, the decree as held in our opinion being necessarily limited in effect to the actual parties to the agreement.

At no time in the instant case was the preservation or the impairment of the trust fund or its income threatened. Nor did the decree save one dollar for the estate. It settled no legal question effecting the trust with which its trustee may hereafter be confronted in the administration of the trust. The decree simply confirms a compromise agreement between two disputing parties as to which is entitled presently to 1/15th of the income and finally to 1/15th of the corpus and is confined strictly to the actual parties to the agreement. The rights or interests of no other persons interested in the trust were either aided or prejudiced, but remain the same as if this suit had never been instituted.

With utmost deference to able counsel, we are not able to see any similarity between this case and *Vanderbilt University* v. *Mitchell, supra*. Nor are we able to detect the slightest benefit to this trust, as such, by reason of the services of the attorneys for the parties engaged in the controversy. We felt, therefore, compelled under the

rule that seems to be conceded to hold that these fees could not properly be paid from the trust estate. We are compelled to adhere to the conclusion reached. As stated in *Southern* v. *Beeler, Attorney General*, 183 Tenn. 272, 302, 195 S. W. (2d) 857, 870, this conclusion represents ''not so much the will of the Court as the will of the law.''

The petition to rehear is denied.

All concur.